# RUSH ET AL. *v.* SAVCHUK

No. 78–952.   Argued October 3, 1979—Decided January 21, 1980

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., *ante,* p. 299, and STEVENS, J., *post,* p. 333, filed dissenting opinions.

*O. C. Adamson II* argued the cause for appellants. With him on the briefs was *James F. Roegge.*

*Edward H. Borkon* argued the cause and filed a brief for appellee.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This appeal presents the question whether a State may constitutionally exercise *quasi in rem* jurisdiction over a defendant who has no forum contacts by attaching the contractual obligation of an insurer licensed to do business in the State to defend and indemnify him in connection with the suit.

I

On January 13, 1972, two Indiana residents were involved in a single-car accident in Elkhart, Ind. Appellee Savchuk, who was a passenger in the car driven by appellant Rush, was injured. The car, owned by Rush's father, was insured by appellant State Farm Mutual Automobile Insurance Co. (State Farm) under a liability insurance policy issued in Indiana. Indiana's guest statute would have barred a claim by Savchuk. Ind. Code § 9–3–3–1 (1976).

Savchuk moved with his parents to Minnesota in June 1973.[1] On May 28, 1974, he commenced an action against Rush in the Minnesota state courts.[2] As Rush had no contacts with Minnesota that would support *in personam* jurisdiction, Savchuk attempted to obtain *quasi in rem* jurisdiction by garnishing State Farm's obligation under the insurance policy to defend and indemnify Rush in connection with such a suit.[3] State Farm does business in Minnesota.[4] Rush was

---

[1] Savchuk moved to Pennsylvania after this appeal was filed.

[2] The suit was filed after the 2-year Indiana statute of limitations had run. 272 N. W. 2d 888, 891, n. 5 (1978).

[3] Minnesota Stat. § 571.41, subd. 2 (1978), provides in relevant part:
"Notwithstanding anything to the contrary herein contained, a plaintiff in

personally served in Indiana. The complaint alleged negligence and sought $125,000 in damages.[5]

As provided by the state garnishment statute, Savchuk moved the trial court for permission to file a supplemental complaint making the garnishee, State Farm, a party to the action after State Farm's response to the garnishment summons asserted that it owed the defendant nothing.[6] Rush and State

---

any action in a court of record for the recovery of money may issue a garnishee summons before judgment therein in the following instances only:

.        .        .        .        .

"(b) If the court shall order the issuance of such summons, if a summons and complaint is filed with the appropriate court and either served on the defendant or delivered to a sheriff for service on the defendant not more than 30 days after the order is signed, and if, upon application to the court it shall appear that:

.        .        .        .        .

"(2) The purpose of the garnishment is to establish quasi in rem jurisdiction and that

.        .        .        .        .

"(b) defendant is a nonresident individual, or a foreign corporation, partnership or association.

"(3) The garnishee and the debtor are parties to a contract of suretyship, guarantee, or insurance, because of which the garnishee may be held to respond to any person for the claim asserted against the debtor in the main action."

The Minnesota Supreme Court cited this version of the statute, enacted in 1976, in its opinion in 272 N. W. 2d 888 (1978) (*Savchuk II*). The version of the statute that was in effect at the time of the original opinion, 311 Minn. 480, 245 N. W. 2d 624 (1976) (*Savchuk I*), does not differ in any important respect.

[4] State Farm is an Illinois corporation that does business in all 50 States, the District of Columbia, and several Canadian Provinces. The Insurance Almanac 431–432 (1977).

[5] The prayer was later reduced voluntarily to $50,000, the face amount of the policy.

[6] Minnesota Stat. § 571.495 (1978) requires the garnishee to disclose the amount of his debt to the defendant. Section 571.51 provides in relevant part:

"[I]n all . . . cases where the garnishee denies liability, the judgment creditor may move the court at any time before the garnishee is discharged,

Farm moved to dismiss the complaint for lack of jurisdiction over the defendant.[7] The trial court denied the motion to dismiss and granted the motion for leave to file the supplemental complaint.

On appeal, the Minnesota Supreme Court affirmed the trial court's decision. 311 Minn. 480, 245 N. W. 2d 624 (1976) (*Savchuk I*). It held, first, that the obligation of an insurance company to defend and indemnify a nonresident insured under an automobile liability insurance policy is a garnishable res in Minnesota for the purpose of obtaining *quasi in rem* jurisdiction when the incident giving rise to the action occurs outside Minnesota but the plaintiff is a Minnesota resident when the suit is filed. Second, the court held that the assertion of jurisdiction over Rush was constitutional because he had notice of the suit and an opportunity to defend, his liability was limited to the amount of the policy, and the garnishment procedure may be used only by Minnesota residents. The court expressly recognized that Rush had engaged in no voluntary activity that would justify the exercise of *in personam* jurisdiction. The court found, however, that considerations of fairness supported the exercise of *quasi in rem* jurisdiction because in accident litigation the insurer controls the defense of the case, State Farm does business in and is regulated by the State, and the State has an interest in protecting its residents and providing them with a forum in which to litigate their claims.

Rush appealed to this Court. We vacated the judgment and remanded the cause for further consideration in light of

on notice to both the judgment debtor and the garnishee, for leave to file a supplemental complaint making the latter a party to the action, and setting forth the facts upon which he claims to charge him; and, if probable cause is shown, such motion shall be granted. . . ." Minn. Stat. § 571.51 (1978).

The party-garnishee is not a defendant.

[7] The motion to dismiss also alleged lack of subject-matter jurisdiction, insufficiency of process, and insufficiency of service of process.

*Shaffer* v. *Heitner,* 433 U. S. 186 (1977). 433 U. S. 902 (1977).

On remand, the Minnesota Supreme Court held that the assertion of *quasi in rem* jurisdiction through garnishment of an insurer's obligation to an insured complied with the due process standards enunciated in *Shaffer.* 272 N. W. 2d 888 (1978) (*Savchuk II*). The court found that the garnishment statute differed from the Delaware stock sequestration procedure held unconstitutional in *Shaffer* because the garnished property was intimately related to the litigation and the garnishment procedure paralleled the asserted state interest in "facilitating recoveries for resident plaintiffs." 272 N. W. 2d, at 891.[8] This appeal followed.

## II

The Minnesota Supreme Court held that the Minnesota garnishment statute embodies the rule stated in *Seider* v. *Roth,* 17 N. Y. 2d 111, 216 N. E. 2d 312 (1966), that the contractual obligation of an insurance company to its insured under a liability insurance policy is a debt subject to attachment under state law if the insurer does business in the State.[9] *Seider* jurisdiction was upheld against a due process challenge in *Simpson* v. *Loehmann,* 21 N. Y. 2d 305, 234 N. E. 2d 669 (1967), reargument denied, 21 N. Y. 2d 990, 238 N. E. 2d 319 (1968). The New York court relied on *Harris* v. *Balk,* 198 U. S. 215 (1905), in holding that the presence of the debt

---

[8] Minnesota would apply its own comparative negligence law, rather than Indiana's contributory negligence rule. See *Schwartz* v. *Consolidated Freightways Corp.,* 300 Minn. 487, 221 N. W. 2d 665 (1974). Appellants assert that Minnesota would also decline to apply the Indiana guest statute if this case were tried in Minnesota. Juris. Statement 10, n. 2; cf. *Savchuk II, supra,* at 891–892. The constitutionality of a choice-of-law rule that would apply forum law in these circumstances is not before us. Cf. *Home Ins. Co.* v. *Dick,* 281 U. S. 397 (1930).

[9] 272 N. W. 2d, at 891.

in the State was sufficient to permit *quasi in rem* jurisdiction over the absent defendant. The court also concluded that the exercise of jurisdiction was permissible under the Due Process Clause because, "[v]iewed realistically, the insurer in a case such as the present is in full control of the litigation" and "where the plaintiff is a resident of the forum state and the insurer is present in and regulated by it, the State has a substantial and continuing relation with the controversy." *Simpson* v. *Loehmann, supra,* at 311, 234 N. E. 2d, at 672.

The United States Court of Appeals for the Second Circuit gave its approval to *Seider* in *Minichiello* v. *Rosenberg,* 410 F. 2d 106, adhered to en banc, 410 F. 2d 117 (1968), cert. denied, 396 U. S. 844 (1969), although on a slightly different rationale. Judge Friendly construed *Seider* as "in effect a judicially created direct action statute. The insurer doing business in New York is considered the real party in interest and the nonresident insured is viewed simply as a conduit, who has to be named as a defendant in order to provide a conceptual basis for getting at the insurer." 410 F. 2d, at 109; see *Donawitz* v. *Danek,* 42 N. Y. 2d 138, 142, 366 N. E. 2d 253, 255 (1977). The court held that New York could constitutionally enact a direct action statute, and that the restriction of liability to the amount of the policy coverage made the policyholder's personal stake in the litigation so slight that the exercise of jurisdiction did not offend due process.

New York has continued to adhere to *Seider*.[10] New Hampshire has followed *Seider* if the defendant resides in a *Seider* jurisdiction,[11] but not in other cases.[12] Minnesota is the only

---

[10] *Baden* v. *Staples,* 45 N. Y. 2d 889, 383 N. E. 2d 110 (1978). The State has declined, however, to make the attachment procedure available to nonresident plaintiffs. *Donawitz* v. *Danek,* 42 N. Y. 2d 138, 366 N. E. 2d 253 (1977).

[11] *Forbes* v. *Boynton,* 113 N. H. 617, 313 A. 2d 129 (1973). But cf. *Rocca* v. *Kenney,* 117 N. H. 1057, 381 A. 2d 330 (1977).

[12] *Camire* v. *Scieszka,* 116 N. H. 281, 358 A. 2d 397 (1976).

other State that has adopted *Seider*-type jurisdiction.[13]  The Second Circuit recently reaffirmed its conclusion that *Seider* does not violate due process after reconsidering the doctrine in light of *Shaffer* v. *Heitner*.  *O'Conner* v. *Lee-Hy Paving Corp.*, 579 F. 2d 194, cert. denied, 439 U. S. 1034 (1978).

## III

In *Shaffer* v. *Heitner* we held that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny."  433 U. S., at 212.  That is, a State may exercise jurisdiction over an absent defendant only if the defendant has "certain minimum contacts with [the forum]' such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "  *International Shoe Co.* v. *Washington*, 326 U. S. 310, 316 (1945).  In determining whether a particular exercise of state-court jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum, and the litigation."  *Shaffer* v. *Heitner, supra,* at 204.

It is conceded that Rush has never had any contacts with Minnesota, and that the auto accident that is the subject of

---

[13] The practice has been rejected, based on state law or constitutional grounds, in *Belcher* v. *Government Employees Ins. Co.*, 282 Md. 718, 387 A. 2d 770 (1978); *Javorek* v. *Superior Court*, 17 Cal. 3d 629, 552 P. 2d 728 (1976); *Hart* v. *Cote*, 145 N. J. Super. 420, 367 A. 2d 1219 (Law Div. 1976); *Grinnell* v. *Garrett*, 295 So. 2d 496 (La. App. 1974); *Johnson* v. *Farmers Alliance Mutual Ins. Co.*, 499 P. 2d 1387 (Okla. 1972); *State ex rel. Government Employees Ins. Co.* v. *Lasky*, 454 S. W. 2d 942 (Mo. App. 1970); *Howard* v. *Allen*, 254 S. C. 455, 176 S. E. 2d 127 (1970); *De Rentiis* v. *Lewis*, 106 R. I. 240, 258 A. 2d 464 (1969); *Housley* v. *Anaconda Co.*, 19 Utah 2d 124, 427 P. 2d 390 (1967); *Jardine* v. *Donnelly*, 413 Pa. 474, 198 A. 2d 513 (1964).  See also *Tessier* v. *State Farm Mutual Ins. Co.*, 458 F. 2d 1299 (CA1 1972); *Kirchman* v. *Mikula*, 443 F. 2d 816 (CA5 1971); *Robinson* v. *O. F. Shearer & Sons*, 429 F. 2d 83 (CA3 1970); *Sykes* v. *Beal*, 392 F. Supp. 1089 (Conn. 1975); *Ricker* v. *Lajoie*, 314 F. Supp. 401 (Vt. 1970).

this action occurred in Indiana and also had no connection to Minnesota. The only affiliating circumstance offered to show a relationship among Rush, Minnesota, and this lawsuit is that Rush's insurance company does business in the State. *Seider* constructed an ingenious jurisdictional theory to permit a State to command a defendant to appear in its courts on the basis of this factor alone. State Farm's contractual obligation to defend and indemnify Rush in connection with liability claims is treated as a debt owed by State Farm to Rush. The legal fiction that assigns a situs to a debt, for garnishment purposes, wherever the debtor is found is combined with the legal fiction that a corporation is "present," for jurisdictional purposes, wherever it does business to yield the conclusion that the obligation to defend and indemnify is located in the forum for purposes of the garnishment statute. The fictional presence of the policy obligation is deemed to give the State the power to determine the policyholder's liability for the out-of-state accident.[14]

We held in *Shaffer* that the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action. The ownership of property in the State is *a* contact between the defendant and the forum, and it may suggest the presence of other ties. 433 U. S., at 209. Jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe.*

Here, the fact that the defendant's insurer does business in the forum State suggests no further contacts between the defendant and the forum, and the record supplies no evidence of any. State Farm's decision to do business in Minnesota

---

[14] The conclusion that State Farm's obligation under the insurance policy was garnishable property is a matter of state law and therefore is not before us. Assuming that it was garnishable property, the question is what significance that fact has to the relationship among the defendant, the forum, and the litigation.

was completely adventitious as far as Rush was concerned. He had no control over that decision, and it is unlikely that he would have expected that by buying insurance in Indiana he had subjected himself to suit in any State to which a potential future plaintiff might decide to move. In short, it cannot be said that the *defendant* engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable, see *Kulko* v. *California Superior Court*, 436 U. S. 84, 93–94 (1978); *Hanson* v. *Denckla*, 357 U. S. 235, 253 (1958), merely because his insurer does business there.

Nor are there significant contacts between the litigation and the forum. The Minnesota Supreme Court was of the view that the insurance policy was so important to the litigation that it provided contacts sufficient to satisfy due process.[15] The insurance policy is not the subject matter of the case, however, nor is it related to the operative facts of the negligence action. The contractual arrangements between the defendant and the insurer pertain only to the conduct, not the substance, of the litigation, and accordingly do not affect the court's jurisdiction unless they demonstrate ties between the defendant and the forum.

In fact, the fictitious presence of the insurer's obligation in Minnesota does not, without more, provide a basis for concluding that there is *any* contact in the *International Shoe* sense

---

[15] The court explained: "In the instant case, the insurer's obligation to defend and indemnify, while theoretically separable from the tort action, has *no* independent value or significance apart from accident litigation. In the accident litigation, however, it is inevitably the focus, determining the rights and obligation [*sic*] of the insurer, the insured, and practically speaking, the victim." *Savchuk II*, 272 N. W. 2d, at 892 (emphasis in original). The court considered the "practical relationship between the insurer and the nominal defendant," *ibid.*, the limitation of liability to the policy amount, and the restriction of the garnishment procedure to resident plaintiffs, and concluded that "the relationship between the defending parties, the litigation, and the forum state," *id.*, at 893, was sufficient to sustain the exercise of jurisdiction.

between Minnesota and the insured. To say that "a debt follows the debtor" is simply to say that intangible property has no actual situs, and a debt may be sued on wherever there is jurisdiction over the debtor. State Farm is "found," in the sense of doing business, in all 50 States and the District of Columbia. Under appellee's theory, the "debt" owed to Rush would be "present" in each of those jurisdictions simultaneously. It is apparent that such a "contact" can have no jurisdictional significance.

An alternative approach for finding minimum contacts in *Seider*-type cases, referred to with approval by the Minnesota Supreme Court,[16] is to attribute the insurer's forum contacts to the defendant by treating the attachment procedure as the functional equivalent of a direct action against the insurer. This approach views *Seider* jurisdiction as fair both to the insurer, whose forum contacts would support *in personam* jurisdiction even for an unrelated cause of action, and to the "nominal defendant." Because liability is limited to the policy amount, the defendant incurs no personal liability,[17] and the judgment is satisfied from the policy proceeds which are not available to the insured for any purpose other than paying accident claims, the insured is said to have such a slight stake in the litigation as a practical matter that it is not unfair to make him a "nominal defendant" in order to obtain jurisdiction over the insurance company.

*Seider* actions are not equivalent to direct actions, however.[18] The State's ability to exert its power over the "nomi-

---

[16] *Id.*, at 892–893; but see *Savchuk I*, 311 Minn., at 488, 245 N. W. 2d, at 629.

[17] See *Savchuk II*, 272 N. W. 2d, at 892; *Simpson* v. *Loehmann*, 21 N. Y. 2d 990, 991, 238 N. E. 2d 319, 320 (1968).

[18] In *Savchuk I*, the Minnesota Supreme Court rejected Rush's argument that the garnishment procedure amounted to a direct action, observing: "The defendant, not the insurer, is the party sued. There is nothing in the statute which suggests that the insurer should be named as a defendant." 311 Minn., at 488, 245 N. W. 2d, at 629. See n. 6, *supra.*

nal defendant" is analytically prerequisite to the insurer's entry into the case as a garnishee. If the Constitution forbids the assertion of jurisdiction over the insured based on the policy, then there is no conceptual basis for bringing the "garnishee" into the action. Because the party with forum contacts can only be reached through the out-of-state party, the question of jurisdiction over the nonresident cannot be ignored.[19] Moreover, the assumption that the defendant has no real stake in the litigation is far from self-evident.[20]

The Minnesota court also attempted to attribute State Farm's contacts to Rush by considering the "defending parties" together and aggregating their forum contacts in determining whether it had jurisdiction.[21] The result was the

---

[19] Compare the direct action statute upheld in *Watson v. Employers Liability Assurance Corp.*, 348 U. S. 66 (1954), which was applicable only if the accident or injury occurred in the State or the insured was domiciled there and which permitted the plaintiff to sue the insurer alone, without naming the insured as a defendant. *Id.*, at 68, n. 4.

[20] A party does not extinguish his legal interest in a dispute by insuring himself against having to pay an eventual judgment out of his own pocket. Moreover, the purpose of insurance is simply to make the defendant whole for the economic costs of the lawsuit; but noneconomic factors may also be important to the defendant. Professional malpractice actions, for example, question the defendant's integrity and competence and may affect his professional standing. Cf. *Donawitz v. Danek*, 42 N. Y. 2d 138, 366 N. E. 2d 253 (1977) (medical malpractice action premised on *Seider* jurisdiction dismissed because plaintiff was a nonresident). Further, one can easily conceive of cases in which the defendant might have a substantial economic stake in *Seider* litigation—if, for example, multiple plaintiffs sued in different States for an aggregate amount in excess of the policy limits, or if a successful claim would affect the policyholder's insurability. For these reasons, the defendant's interest in the adjudication of his liability cannot reasonably be characterized as *de minimis*.

[21] The court stated: "We view as relevant the relationship between the *defending parties*, the litigation, and the forum state. It cannot be said that Minnesota lacks such minimally-requisite 'contacts, ties or relations' to those *defending parties* as to offend the requirements of due process." *Savchuk II*, 272 N. W. 2d, at 893 (emphasis added).

assertion of jurisdiction over Rush based solely on the activities of State Farm. Such a result is plainly unconstitutional. Naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum. The requirements of *International Shoe,* however, must be met as to each defendant over whom a state court exercises jurisdiction.

The justifications offered in support of *Seider* jurisdiction share a common characteristic: they shift the focus of the inquiry from the relationship among the defendant, the forum, and the litigation to that among the plaintiff, the forum, the insurer, and the litigation. The insurer's contacts with the forum are attributed to the defendant because the policy was taken out in anticipation of such litigation. The State's interests in providing a forum for its residents and in regulating the activities of insurance companies are substituted for its contacts with the defendant and the cause of action. This subtle shift in focus from the defendant to the plaintiff is most evident in the decisions limiting *Seider* jurisdiction to actions by forum residents on the ground that permitting nonresidents to avail themselves of the procedure would be unconstitutional.[22] In other words, the plaintiff's contacts with the forum are decisive in determining whether the defendant's due process rights are violated.

Such an approach is forbidden by *International Shoe* and its progeny. If a defendant has certain judicially cognizable ties with a State, a variety of factors relating to the particular cause of action may be relevant to the determination whether the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." See *McGee* v. *International Life Ins. Co.,* 355 U. S. 220 (1957); cf. *Kulko* v. *California Superior Court,* 436 U. S., at 98–101. Here, however, the defendant has *no* contacts with the forum, and the

---

[22] See, *e. g., Farrell* v. *Piedmont Aviation, Inc.,* 411 F. 2d 812 (CA2 1969); *Rintala* v. *Shoemaker,* 362 F. Supp. 1044 (Minn. 1973); *Donawitz* v. *Danek, supra; Savchuk I.*

Due Process Clause "does not contemplate that a state may make binding a judgment . . . against an individual or corporate defendant with which the state has no contacts, ties, or relations." *International Shoe Co.* v. *Washington,* 326 U. S., at 319. The judgment of the Minnesota Supreme Court is, therefore,

*Reversed.*

[For dissenting opinion of MR. JUSTICE BRENNAN, see *ante,* p. 299.]

MR. JUSTICE STEVENS, dissenting.

As the Court notes, appellant Rush had no contact with Minnesota that would support personal jurisdiction over him in that State. *Ante,* at 322. Moreover, *Shaffer* v. *Heitner,* 433 U. S. 186, precludes the assertion of *quasi in rem* jurisdiction over his property in that forum if the intangible property attached is unrelated to the action. It does not follow, however, that the plaintiff may not obtain *quasi in rem* jurisdiction over appellant's insurance policy, since his carrier does business in Minnesota and since it has also specifically contracted in the policy attached to defend the very litigation that plaintiff has instituted in Minnesota.

In this kind of case, the Minnesota statute authorizing jurisdiction is correctly characterized as the "functional equivalent" of a so-called direct-action statute. The impact of the judgment is against the insurer.* I believe such a direct-action statute is valid as applied to a suit brought by a forum resident, see *Watson* v. *Employers Liability Assurance Corp.,* 348 U. S. 66, 72, even if the accident giving rise to the action did not occur in the forum State, see *Minichiello* v. *Rosenberg,*

---

*It seems to me that the possible impact of a default judgment on the reputation of an individual, see *ante,* at 331, n. 20, who has no contacts whatever with the forum State is far too remote to affect the analysis of the constitutional issue in this case.

410 F. 2d 106 (CA2 1968), cert. denied, 396 U. S. 844, so long as it is understood that the forum may exercise no power whatsoever over the individual defendant.   As so understood, it makes no difference whether the insurance company is sued in its own name or, as Minnesota law provides, in the guise of a suit against the individual defendant.

In this case, although appellant Rush may have a contractual obligation to his insurer to appear in court to testify and generally to cooperate in the defense of the lawsuit, it is my understanding that Minnesota law does not compel him to do so through the contempt power or otherwise.   Moreover, any judgment formally entered against the individual defendant may only be executed against the proceeds of his insurance policy.   In my opinion, it would violate the Due Process Clause to make any use of such a judgment against that individual—for example, by giving the judgment collateral-estoppel effect in a later action against him arising from the same accident.   Accord, *Minichiello* v. *Rosenberg, supra,* at 112; Note, The Constitutionality of *Seider* v. *Roth* after *Shaffer* v. *Heitner,* 78 Colum. L. Rev. 409, 418–419 (1978). But we are not now faced with any problem concerning use of a *quasi in rem* judgment against an individual defendant personally.   I am therefore led to the conclusion that the Federal Constitution does not require the Minnesota courts to dismiss this action.