OPINION OF THE COURT
Marie M. Lambert, S.
The decedent herein was a physician. During his lifetime he was joined as a defendant, with two hospitals and other persons, in a proceeding in the Queens County Supreme Court alleging negligence in the rendition of medical treatment. The alleged negligence took place in Queens and decedent was served with process in this State in 1974. He died in 1976 while this action was still pending. At that time he was a domiciliary of North Carolina where his will was probated and his wife appointed executrix.
The object of this proceeding is the appointment of an ancillary fiduciary in this State against whom the action against decedent can be continued. A decision of the Queens County Supreme Court in June, 1978 held that the domi *68 ciliary fiduciary could not be substituted in the negligence action by virtue of the North Carolina Statute of Limitations, but that this time bar would not preclude substitution of a New York ancillary fiduciary. (Rueda v Physicians Hosp., Supreme Ct, Queens County, June 14, 1978, Graci, J.) The jurisdictional prerequisite of ancillary probate under SCPA 1602 is that the will may operate on “any property in this state”. Under SCPA 206 (subd 2, par [a]) this court has exclusive jurisdiction over the estate of a nondomiciliary who left property within this county and no other. The only property which could support this court’s jurisdiction here is the “debt” represented by decedent’s liability insurance policy. The insurer has an office in this county although it is not a New York corporation and its home office is in Wisconsin.
Until the recent decision of the United States Supreme Court in Rush v Savchuk (444 US 320), such a policy would unquestionably have sufficed to confer jurisdiction upon this court as a “debt” in favor of the decedent within the meaning of SCPA 208 (Matter of Riggle, 11 NY2d 73; Matter of Allen, 64 Misc 2d 920). The domiciliary executrix has filed an answer in effect questioning this court’s jurisdiction in the light of Rush v Savchuk (supra) but asking that ancillary letters testamentary be issued to her if the court finds that it has jurisdiction.
In Matter of Riggle, (supra), the Court of Appeals held that the Surrogate had jurisdiction to issue ancillary letters of administration in the estate of a nonresident decedent on the basis that he left property in New York consisting of the liability insurer’s obligation to defend him. Riggle is said to have given birth to the doctrine of Seider v Roth (17 NY2d 111) which upheld jurisdiction in the underlying negligence action based on the attachment of the liability policy by service on the insurer’s local office. (Siegel, Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, SCPA 208, 1979-1980 Pocket Part, p 29). Rush v Savchuk (supra) held that the Seider v Roth doctrine was an unconstitutional violation of due process where the defendant had no other contacts with the forum. In an earlier commentary on the same statute *69 Professor Siegel suggests that the doctrine of Seider v Roth may represent an “over-analogy” to Riggle in that a less stringent test of jurisdiction is appropriate in the context of the appointment of a fiduciary. (Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 58A, SCPA 208, 197, 202). And in Matter of Allen (supra, p 923), Surrogate Bennett carefully noted: “However, in assuming jurisdiction over this estate, this court is not now adjudicating any question of forum non conveniens, of negligence, or of liability under the insurance policy in question. The rights of the insurance carrier and its defenses are thus not affected in any manner by this decision.”
In any event Rush v Savchuk does not foreclose jurisdiction in this case. The Supreme Court opinion states (444 US, at pp 332-333): “If a defendant has certain judicially cognizable ties with a State, a variety of factors relating to the particular cause of action may be relevant to the determination whether the exercise of jurisdiction would comport with ‘traditional notions of fair play and substantial justice.’ See McGee v. International Life Ins. Co., 355 U.S. 220 (1957); cf. Kulko v California Superior Court, 436 U.S., at 98-101. Here, however, the defendant has no contacts with the forum, and the Due Process Clause ‘does not contemplate that a state may make binding a judgment * * * against an individual or corporate defendant with which the state has no contacts, ties, or relations.’ International Shoe Co. v Washington, 326 U.S., at 319.” Here the liability policy is not the sole basis for jurisdiction. The acts complained of occurred in this State, and the decedent was both domiciled and served personally in New York State. This court holds that Rush v Savchuk does not preclude the issuance of ancillary letters based on a liability policy in these circumstances. The liability policy fixes jurisdiction to issue letters in this county because it is where the insurer maintains its only office in this State. (SCPA 208; Matter of Riggle, supra.) In an article discussing the effect of Rush v Savchuk, Professor McLaughlin wrote: “Rush v. Savchuk is a constitutional decision that due process is violated if a state purports to assert quasi in rem jurisdiction by attaching a liability insurance policy. If there is another basis of jurisdiction, e.g., the accident *70 occurred in New York and the defendant is therefore subject to in personam jurisdiction, would a Seider-Roth attachment be available as a security device? This is not a constitutional question but is, rather, a question of state law, a distinction noted by the Court in Rush v. Savchuk. Seider v. Roth, of course, held that the liability policy represented an attachable asset; and there is no reason to believe that the New York Court of Appeals would retreat from that conclusion.” . (J. M. McLaughlin, New York Trial Practice: Seider v Roth—Farewell to Alms, NYLJ, Feb. 8, 1980, p 1, col 1, p 2, col 2.)
Submit decree on notice granting limited ancillary letters testamentary to the decedent’s widow.