Martin P. HOLLER, Administrator of the Estate of Darrol L. Holler, Deceased

v.

E–J MANUFACTURING CO., INC.

Martin P. HOLLER, Administrator of the Estate of Darrol L. Holler, Deceased

v.

HAMPTON AMUSEMENT COMPANY.

Civ. A. Nos. 80–1918, 78–3890.

United States District Court, E.D. Pennsylvania.

March 1, 1982.

Samuel Abloeser, Philadelphia, Pa., for plaintiff.

William V. Coleman, Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On November 20, 1978, plaintiff Martin Holler ("Holler"), administrator of the estate of Darrol L. Holler, filed with this Court a complaint alleging that Darrol Holler's death resulted from an accident that occurred while he was a passenger on an "umbrella" ride manufactured by Hampton Amusement Corporation ("Hampton Amusement") and was the proximate result of the defective condition of said ride and the negligence of the manufacturer. Discovery proceeded in the matter until mid-1980. Shortly before this time, Holler discovered that Hampton Amusement, incorporated under the laws of Missouri, was no

longer an active corporation and that its assets had been sold to E–J Manufacturing Co., Inc. ("E–J"), a Missouri corporation that now manufactures amusement rides under the fictitious name of Hampton Rides. Believing E–J to be a successor corporation of Hampton Amusement and therefore subject to suit, Holler commenced this action against E–J on May 19, 1980, filing a complaint that substantially re-stated the averments of the complaint filed against Hampton Amusement.

On December 10, 1980, E–J filed a motion to dismiss for lack of personal jurisdiction, averring that E–J did not possess sufficient minimum contacts with Pennsylvania to be sued by Holler, a Pennsylvania resident, in this diversity action. For the reasons here-inafter set forth, the Court will deny E–J's motion to dismiss.

The records of the Missouri Secretary of State show that Hampton Amusement was incorporated in Missouri on May 19, 1966, that it failed to pay its corporate franchise tax, failed to file an annual report during 1978, and that on January 1, 1979, Hampton Amusement lost its corporate standing in the state of Missouri. The Secretary of State's records also show that on February 24, 1978, Hampton Rides was registered as a fictitious name in Missouri, and that E–J is the owner of Hampton Rides. The rec-ords of the Secretary of State also show that E–J was incorporated on January 6, 1978, in Missouri. E–J's answers to plain-tiff's interrogatories state that it purchased the assets formerly owned by Hampton Amusement from one Theodore Sneed on January 19, 1978. Mr. Sneed was the regis-tered agent of Hampton Amusement and remains so registered with the Missouri Sec-retary of State. The record does not indi-cate whether Mr. Sneed was a shareholder of Hampton Amusement or how he ac-quired the company's assets. Plaintiff claims that on August 27, 1978 Darrol Hol-ler was killed while on an "umbrella" ride manufactured by Hampton Amusement. Holler contends that the defendant E–J is liable on the basis of Section 402A of the Restatement (Second) of torts, negligence, and breach of warranty.

In its motion to dismiss, E–J asserts that its principal place of business is in St. Charles, Missouri and that it has facilities at Portage DeSioux, Missouri, but that it has not done and does not do business in Pennsylvania. The affidavit of one Erwin D. Davis, an officer of E–J, is attached to defendant's motion and states that E–J "did not sell an amusement park ride at Hampton Amusement Park [sic] known as the Hampton Umbrella ride", and that it "did not service an amusement park ride . . . known as the Hampton Umbrella ride".

Holler contends that E–J, now market-ing amusement park rides under the name Hampton Rides, is liable as the successor to Hampton Amusement. Copies of bills of lading and orders obtained in discovery show that "Hampton Rides" has been en-gaged regularly since 1978 in the business of selling replacement parts for Hampton Rides throughout Pennsylvania. In addi-tion, the discovery also shows that "Hamp-ton Rides" has been advertising in publica-tions circulated to amusement park opera-tors throughout Pennsylvania. In response to interrogatories, defendant E–J has ad-mitted that two of its corporate officers traveled to Pennsylvania to solicit business in the state.

When a defendant challenges the in personam jurisdiction of a court, the plain-tiff bears the burden of persuasion to show that the non-resident defendant's activities in the forum state are sufficient to bring it within the reach of the court's jurisdiction. In general, a plaintiff must shoulder this burden through the use of appropriate affi-davits or documents. Since the filing of defendant's motion to dismiss for lack of personal jurisdiction, both plaintiff and de-fendant have engaged in discovery and sub-mitted exhibits and affidavits on the issue of E–J's contacts with Pennsylvania.

Service of the complaint in this case was made on E–J pursuant to Pennsylvania's long-arm statute, 42 Pa.C.S.A. §§ 5321–5329 (Purdon's 1981). To determine wheth-er defendant is subject to the personal jur-isdiction of this Court, the Court need only

consider whether E–J has sufficient "minimum contacts" with Pennsylvania, such that the exercise of jurisdiction over the defendant does not offend the due process clause of the Fifth Amendment. *See Jacobs v. Lakewood Aircraft Service, Inc.*, 493 F.Supp. 46 (E.D.Pa.1980); *Watson McDaniel Co. v. National Pump & Control, Inc.*, 493 F.Supp. 18 (E.D.Pa.1979).

The basic standards for evaluating whether the exercise of due process jurisdiction comports with due process are set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *International Shoe* held that to satisfy due process, the defendant must have certain "minimum contacts" with the forum state such that the "maintenance of the suit does offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

■ *International Shoe,* as refined by subsequent cases, has resulted in Court use of a three-part inquiry to gauge whether the defendant has minimum contact with the forum state. The Court must ask:

1. Has the defendant purposely availed itself of the privilege of acting within the forum state, thus invoking the benefit and protection of its laws? *See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

2. Did the cause of action arise from defendant's activities within the forum state?

3. Do the defendants' acts have a substantial enough connection with the forum state to make jurisdiction over the defendant reasonable?

*See also Bev-Mark, Inc. v. Summerfield GMC Truck Co.,* 268 Pa.Super. 74, 79; 407 A.2d 443, 445 (1971); *Proctor and Schwartz, Inc. v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 323 A.2d 11 (1974).

Recent Supreme Court cases such as *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1979), *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) and *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) have not altered the basic minimum contacts test but have reaffirmed it, supplementing the considerations listed above. *Shaffer* held that the exercise of quasi in rem jurisdiction was subject to the due process constraints of the minimum contacts test set forth in *International Shoes. Kulko* held that long-arm jurisdiction based on an act outside the forum causing impact within the forum was limited to cases involving products liability and tortious conduct. *World-Wide Volkswagen* stated that to justify an exercise of jurisdiction under a long-arm statute, the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." 444 U.S. at 292, 100 S.Ct. at 564.

Though the Court in *World-Wide* found the defendant, a retail dealer and regional distributor of automobiles in the New York-New Jersey-Connecticut area, to lack sufficient minimum contact with Oklahoma, the forum state, the Court made clear that *World-Wide's* holding was limited to its facts and would not preclude an exercise of jurisdiction against an out-of-state manufacturer in a products liability claim. Said the Court:

> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, *directly or indirectly,* the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.
>
> The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

444 U.S. at 297, 100 S.Ct. at 567 (emphasis added).

As the Court observed in *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 576, 62 L.Ed.2d 516 (1980), decided the same day as *World-Wide Volkswagen,* "[I]n determining whether a particular exercise of ... jurisdiction is consistent with due process, the inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'", quoting *Shaffer v. Heitner,* 433 U.S. at 204, 97 S.Ct. at 2579. Thus, the Supreme Court cases in this area make it clear that assessing the sufficiency of the defendant's contact with the forum state does not involve a mechanical or quantitative test. Rather, the Court must examine the totality of E–J's contact with Pennsylvania to determine whether exercising jurisdiction would offend basic notions of fairness and consequently infringe upon E–J's due process rights.

An examination of the scope of E–J's activity in Pennsylvania, conducted under the name "Hampton Rides", discloses the existence of a pattern and practice of seeking business from the sale of Hampton Umbrella rides and parts for said rides throughout Pennsylvania since 1978. E–J, operating as "Hampton Rides", has made many sales in Pennsylvania. E–J/"Hampton Rides" has sold and delivered replacement parts for its amusement rides in Pennsylvania. Two of its corporate officers, as heretofore pointed out, have, according to defendant's answers to plaintiff's interrogatories, personally come to Pennsylvania to solicit business. Furthermore, "Hampton Rides" has advertised extensively in trade publications that are widely circulated within Pennsylvania.

Taken together, these factors indicate that E–J/"Hampton Rides" has affirmatively attempted to avail itself of the privilege of doing business within Pennsylvania. The defendant's contact with the forum state is such that it should come as no surprise to E–J, operating under the fictitious name "Hampton Rides", that it has been sued in Pennsylvania by a Pennsylvanian who alleges that his deceased brother was injured and killed as a result of a defectively designed product in Pennsylvania. Under these circumstances, it does not offend traditional notions of fairness and due process to permit E–J to be sued in Pennsylvania. The exercise of personal jurisdiction over E–J is reasonable, fair, and fully consistent with due process. For the reasons heretofore set forth, defendant's motion to dismiss will be denied. An appropriate order will be accordingly entered.