**Larry W. DAVIS, Plaintiff,**

v.

**The KROGER COMPANY, Reedsburg Foods, Inc., John Foeder and William Jamerson, Defendants.**

Civ. No. 83–5131.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Dec. 14, 1983.

Walter Niblock, Fayetteville, Ark., for plaintiff.

W.W. Bassett, Jr., Fayetteville, Ark., for Reedsburg Foods, Inc., and John Foeder.

Sidney P. Davis, Jr., Fayetteville, Ark., for The Kroger Co. and William Jamerson.

MEMORANDUM OPINION

INTRODUCTION

H. FRANKLIN WATERS, Chief Judge.

On July 26, 1983, plaintiff, Larry Davis, initiated the instant action against defend-

ants, The Kroger Company, Reedsburg Foods, Inc., John Foeder and William Jamerson, for injuries received on September 24, 1982, at the loading dock of the Kroger Distribution Center in Memphis, Tennessee.

The Kroger Company is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Reedsburg Foods, Inc., is a Wisconsin corporation with its principal place of business in Reedsburg, Wisconsin. John Foeder is a citizen of Wisconsin. William Jamerson is a citizen of Tennessee. Plaintiff is a citizen of Arkansas.

Specifically, plaintiff alleges that he was injured at the loading dock of the Kroger Distribution Center in Memphis, Tennessee, while unloading a truck which had been driven by defendant Foeder.

A pallet jack owned by defendant Kroger and operated by defendant Jamerson allegedly struck plaintiff, pinning him between the pallet jack and the trailer, crushing his ankle.

Defendant Jamerson is alleged to be an agent of Kroger employed by Foeder to assist in unloading the truck that Foeder was driving as an agent of defendant Reedsburg.

In an amended complaint filed September 2, 1983, plaintiff alleges that, prior to the accident, Kroger contacted L.E. Cawood Produce at Cawood's office in Springdale, Arkansas, and contracted with Cawood for Cawood to send a truck and driver to the Kroger warehouse in Memphis. Plaintiff was selected to drive the truck. Plaintiff alleges that he was injured while acting as the agent and employee of Cawood, and that plaintiff would not have been on the loading dock in Memphis were it not for the Kroger-Cawood contract. Plaintiff further contends that the Kroger-Cawood contract was part of a continuing course of conduct whereby Kroger regularly transacted business in Arkansas.

Defendants Kroger and Jamerson have moved, pursuant to Rule 12(b)(2), for dismissal on the ground that this Court lacks jurisdiction over the persons of those defendants. Defendants Reedsburg and Foe-

der answered separately, raising, *inter alia,* the defense of lack of jurisdiction over the persons of those defendants by way of answer rather than by motion.

The Court intends to dispose of the jurisdictional defenses of defendants Reedsburg and Foeder prior to trial, pursuant to Rule 12(d); however, as only defendants Kroger and Jamerson have briefed the issue, the Court will dispose only of the motions of defendants Kroger and Jamerson at this time.

*Discussion*

It is fundamental that the inquiry as to the existence of *in personam* "longarm" jurisdiction requires a two-part analysis. It must appear that the exercise of personal jurisdiction is consistent with the due process requirements of the Fourteenth Amendment and the facts presented must satisfy the requirements of the state "longarm" statute. *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651 (8th Cir. 1982).

■ The due process clause requires that there be a sufficient connection between a defendant and the forum state as to make it "fair" to require a defense of the action in the forum. *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). There must be certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1944). The inquiry must focus on the relationship among the defendant, the forum, and the litigation. *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). The ownership of property, of itself, is insufficient. *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The "foreseeability" that a cause of action may arise in a foreign state is likewise, of itself, insufficient. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The ultimate test is whether the defendant has performed some

act by which it has purposely availed itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In determining whether or not a non-resident's contacts with the forum state are sufficient to impose jurisdiction, courts must consider the nature and quality of the contacts with the forum state, the quantity of the contacts with the forum state, the relation of the cause of action to the contacts, the interest of the forum state in providing a forum for its residents, and the convenience of the parties. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211 (8th Cir.1977). The latter two considerations are only "secondary factors" and are not determinative. *Mountaire, supra.*

■ Obviously, if a non-resident defendant has few or no contacts with the forum state jurisdiction would be lacking where the cause of action is completely unrelated to those contacts. Equally apparent is that jurisdiction would be present where defendant's contacts with the forum state are numerous and varied, at least in those cases where the cause of action arises from those contacts.

The problem, of course, arises in situations where a non-resident defendant has few contacts with the forum state but the cause of action arises from those few contacts, and in situations where a non-resident defendant has numerous contacts with the forum state but the cause of action is unrelated to those contacts.

■ However, after considering the jurisdictional facts at issue here, the Court concludes that it is unnecessary to determine whether the instant case falls within the second or fourth category above. Assuming, *arguendo,* that the instant case involves a cause of action unrelated to the contacts that defendant Kroger has with the state of Arkansas, the Court finds that the nature, quality, and quantity of Kroger's contacts with this state are sufficient to allow the state of Arkansas to exercise *in personam* jurisdiction over it in a man-

ner consistent with the requirements of due process. Further, for whatever limited value they may have, considerations as to the interest of the state of Arkansas in providing a forum for its residents and as to the convenience of the parties, neither weigh in favor of defendant Kroger. In no sense can it be said that requiring Kroger to defend this action in this forum would offend traditional notions of fair play and substantial justice. Nor would anyone seriously maintain that Kroger has not purposely availed itself of the privilege of conducting activities within the state of Arkansas thus invoking the benefits and protections of its laws.

Kroger, in fact, concedes as much, and focuses the thrust of its argument on the requirements of Arkansas' "longarm" statute, ARK.STAT.ANN. § 27–2502.

Section 27–2502 provides, in pertinent part:

   \*    \*    \*    \*    \*    \*

C. Personal jurisdiction based upon conduct.

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

   (a) transacting any business in this State;

   \*    \*    \*    \*    \*    \*

2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him.

   \*    \*    \*    \*    \*    \*

It is undisputed that Kroger transacts "any business" in this State. Thus, the only issue remaining for consideration is whether plaintiff's claim for relief "arises from" Kroger's transaction of business in Arkansas.

At this point it is worthy of mention that although it is often said that section 27–2502 expands Arkansas' "personal jurisdiction over nonresidents, within the limits

permitted by the due process clause of the United States Constitution," *SD Leasing, Inc. v. Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982), what is meant is that if the cause of action arises from the transaction of business within the state of Arkansas, then Arkansas' courts will accept jurisdiction so long as to do so is consistent with the due process clause.

That the tests for jurisdiction are not the same under the Arkansas statute and the due process clause is obvious. For due process purposes, the relation of the cause of action to the non-resident defendant's contacts with the forum state is but one factor to consider in determining whether the exercise of *in personam* jurisdiction would violate "traditional notions of fair play and substantial justice." *International Shoe Co., supra.* Under the Arkansas longarm statute, however, the Arkansas courts absolutely require that the cause of action "arise from" the non-resident defendant's contacts with the state, in this case, the transaction of "any business" within the state. Section 27–2502(C)(1)(a), (2).

Arkansas law is settled that a single contract can provide the basis for the exercise of jurisdiction over a non-resident defendant so long as there is a substantial connection between the contract and the state of Arkansas. *SD Leasing, Inc., supra.*

Thus, whether Arkansas' longarm statute would authorize the exercise of *in personam* jurisdiction depends upon whether plaintiff's injuries can be said to have "arisen from" the contract between Kroger and Cawood.

The Court believes that a suit on the contract itself would be actionable in Arkansas, but this has little bearing on the propriety of Arkansas' exercise of *in personam* tort jurisdiction.

Plaintiff asserts, and the Court believes, that "but for" the Kroger-Cawood contract plaintiff would not have been on the Kroger loading dock in Memphis, Tennessee, at the time of the injury.

Kroger, on the other hand, argues that the instant case is controlled by *Krone v. AMI, Inc.*, 367 F.Supp. 1141 (E.D.Ark. 1973), wherein the court found jurisdiction under section 27–2502 lacking.

In *Krone*, plaintiff went to a Holiday Inn in North Little Rock, Arkansas, and made a reservation of a room in defendant's Inn in Shreveport, Louisiana. Plaintiff later checked into the Inn in Shreveport and was there injured. Plaintiff argued that the Holiday Inn in North Little Rock acted as the agent of the defendant in Shreveport, and that the making of the reservation amounted to the transaction of business in Arkansas.

> Said Judge Henley of this argument: The Court has no trouble with that proposition as far as it goes. But it does not go far enough. In order to sustain jurisdiction under the Arkansas statute the plaintiff must show not only that the defendant transacted business in Arkansas, but also that his cause of action is one "arising out of" the transacting of business in this State by the defendant.
>
> In other words, there must be a relationship between the defendant's connection with Arkansas, here the transacting of business, and the injury complained of. And the Court thinks that the relationship must be actual rather than merely antecedent.

*Krone*, at 1143.

Judge Henley found that the contract for the renting of the room in Shreveport by means of the Holidex system in North Little Rock

> amounted to nothing more than an antecedent fact having nothing whatever to do with the injury that plaintiff claims to have sustained. Plaintiff would have received his injury had he made his reservation by a direct telephone call from his own home in North Little Rock to the Holiday Inn in Shreveport, or indeed if he had made no reservation at all and had simply secured a room on March 17 by calling at the desk of the Holiday Inn at Shreveport.

Therefore, *Krone* is not exactly on point. In this case it cannot be said that plaintiff would have received his injury even in the absence of the Kroger-Cawood contract, for plaintiff would not have been at the Memphis loading dock had the Kroger-Cawood contract not been made.

A result similar to that in *Krone* was reached in *Martin v. Kelley Electric Co.*, 371 F.Supp. 1225 (E.D.Ark.1973). In *Martin*, the court found that the non-resident defendant

has transacted business in Arkansas and has contracted to supply goods here within the meaning of section 27–2502, subd. C, par. 1(a) and (b). But, the Court does not find that Martin's injury arose out of (the non-resident defendant's) Arkansas contacts. On the contrary, the Court finds that (the non-resident defendant's) Arkansas activities were entirely unrelated to the injury sustained in Missouri.

\* \* \* \* \* \*

... Martin's injury was not a result, natural or otherwise, of anything that (the non-resident defendant) ever did in this State.

*Martin*, at 1228.

As noted, plaintiff's injury is related, to some degree, to Kroger's Arkansas contract, *i.e.*, the Kroger-Cawood contract. Therefore, neither *Krone* or *Martin* are controlling. Nonetheless, the Court believes that Kroger's contacts with Arkansas are, as in *Krone* and *Martin*, more antecedent than actual, and that jurisdiction under the Arkansas longarm statute is lacking. As Judge Henley noted in *Krone:*

To uphold the position of the plaintiff in this case would mean that every independent member of a nation-wide organization, such as a motel organization, would be subject to *in personam* tort jurisdiction in any State of the Union simply because it subscribed to a teletype reservation service which was used by the plaintiff for the purpose of securing a reservation, with the plaintiff being injured later while on the business premises pursuant to the reservation so made.

The Court is not willing to extend the scope of the Arkansas statute so far.

In a similar, although not identical vein, to uphold the position of the plaintiff in this case would potentially subject Kroger to nationwide *in personam* tort jurisdiction in any state of the Union. For example, if Kroger had contacted Cawood to have plaintiff drive a truck from Springdale, Arkansas, to California, by way of Texas and New Mexico, and along the way plaintiff were to be assaulted by striking unionized Kroger employees in Texas, injured by the negligence of a drunken Kroger employee in New Mexico, and killed by the explosion of a defective Kroger product manufactured and used only in California, plaintiff's theory would allow plaintiff's personal representative to bring assault, negligence, and strict liability actions in Arkansas simply because Kroger telephoned Cawood in Springdale. Although in a loose sense, it could be said that "but for" the initial contact none of the claims would have arisen, in no sense can it be said that the connection between the claims and Kroger's Arkansas contacts was "actual" rather than merely "antecedent."

A different result may adhere in the above hypothetical situation if, for example, plaintiff was contacted in Arkansas for the purpose of attempting to "break" a strike in Texas, terminate drunken employees in New Mexico, or transport the defective product in California. If the parties had fairly contemplated those possibilities, however remote, while contracting, then it could be said that the claims "arose from" the Arkansas contact and that the connection between the claim and the Arkansas contact was "actual" rather than "antecedent." If the contract proximately relates to the injury received, then it can fairly be said that the injuries arose from the defendant's transaction of business in this state, rather than from an unforeseen, uncontemplated, intervening act or omission by an employee of defendant in another state.

Plaintiff did not allege, either in the original complaint or in the amended complaint,

that plaintiff was instructed by Kroger to load the truck in Memphis, loiter about at the place of injury on the loading dock in Memphis, or in any manner be in a position which would have subjected him to the peril of the negligence of out-of-state Kroger employees. The facts alleged do not indicate that the Kroger-Cawood contract fairly contemplated that plaintiff would be placed in a position of peril, nor that plaintiff was purposely sent to Memphis for a purpose which is proximately interrelated to the injury received. From plaintiff's allegations it appears that any negligence on the part of Kroger of which he complains was independent of the Arkansas contact and that the injuries resulted from the intervening negligence of an out-of-state Kroger agent or employee. As such, the Court believes that plaintiff's injuries did not "arise from" Kroger's transaction of "any business" in this state, within the meaning of section 27–2502(C)(1)(a), (2), and, therefore, that the state of Arkansas lacks *in personam* jurisdiction over defendant Kroger with respect to this claim for relief.

Defendant Jamerson, who is alleged to have acted only as an agent or employee of Kroger, has absolutely no contact with the state of Arkansas and the Court has not the slightest doubt that the exercise of *in personam* jurisdiction by this Court over him is violative of both section 27–2502 and the due process clause. *Frank v. Steel,* 253 Ark. 338, 485 S.W.2d 737 (1972).

In accordance with the above and foregoing, an order dismissing plaintiff's claim with respect to defendants Kroger and Jamerson, pursuant to Rule 12(b)(2), Fed.R. Civ.P., will be concurrently entered.