SCIRICA, Chief Judge,
concurring in part, dissenting in part.
I write separately because I would find specific jurisdiction only as to Miller Yacht’s unfair competition and trade dress infringement claims against appellees Island Yacht and Mariner Yacht. Nevertheless, because appellant’s claims sound in tort, I would remand for the District Court to consider appellees’ forum contacts under the “effects test.” See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir.1998).
I.
Personal jurisdiction over a non-resident defendant may be asserted under general or specific theories of jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868; 80 L.Ed.2d 404 (1984). Because *101 there are no allegations that, appellee^’ contacts with the forum are so “continuous and systematic” as to give rise to general jurisdiction, our inquiry is limited to specific jurisdiction. Specific jurisdiction permits the exercise of personal jurisdiction over non-resident defendant only if the plaintiffs claims “arise out of or relate to” the defendant’s forum contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Consequently, the specific jurisdiction determination is both claim-specific, see Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir.2001) (analyzing specific jurisdiction over tort and contract claims separately); Gehling v. St. George’s Sch. of Med., Ltd., 773 F.2d 539, 543-44 (3d Cir.1985) (finding personal jurisdiction over fraudulent misrepresentation and emotional distress claims, but not negligence and breach of contract claims), and defendant-specific, see Rush v. Savchuk, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) (“The requirements of International Shoe ... must be met as to each defendant.”).[5]
II.
While acknowledging the claim- and defendant-specific nature of the specific jurisdiction. inquiry, the majority concludes the allegations in the complaint require us to attribute the forum contacts of “any one individual Appellee .to all of the Appellees.” The majority reaches this conclusion by inferring the existence of a “partnership” based upon Miller Yacht’s allegations that Smith and Bogachoff “act[ed] as partners” in their negotiations with Miller Yacht, in which they represented Island Yacht and Mariner Yacht, respectively. Although we accept all allegations in the complaint as true and construe all disputed facts in favor of the plaintiff on a motion to dismiss under Fed. R. Civ. Pro. 12(b)(2), I do not believe it is reasonable to infer the appel-lees engaged in a “partnership.”[6]
There is no averment in the complaint or in the' supporting affidavits that appel-lees-two non-resident persons and two out-of-state corporations-are collectively organized as a partnership.1 As I read the complaint,' the allegation that Smith and Bogachoff “act[ed] as partners” merely suggests some level of coordinated cond *102 uct.[7] Of course, this relationship ultimately may prove relevant to the jurisdictional analysis. See Rush, 444 U.S. at 332, 100 S.Ct. 571 (“[T]he parties’ relationships with each other may be significant in evaluating their ties to the forum.”). But on the allegations and affidavits presented, I cannot infer the existence of a partnership that would provide the basis for attributing the jurisdictional contacts of one appellee to them all.[8]
Aggregating appellees’ contacts obscures important differences in their individual forum activities and the alleged conduct giving rise to the claims asserted. For example, Smith’s contacts with New Jersey in arranging his trip to China did not involve Bogachoff or Mariner Yacht. Moreover, as Miller Yacht’s affidavit states, the China trip itself “was in furtherance of negotiations that took place between ... Smith, Island Yacht Brokers and Miller Yacht” relating to Island Yacht becoming an exclusive dealer of “Marine Trader” and “Trade Wind” yachts in Maryland. Appellant App. 41. These negotiations did not involve Bogachoff or Mariner Yacht. Similarly, the primary forum contact relied upon by the majority-receipt of the Miller Yacht sales brochure in New Jersey-is apparently attributable only to Smith in his capacity as agent for Island Yacht. Even assuming Bogachoff had implied authority to act as Smith’s agent during the broker-dealer negotiations with Miller Yacht, this agency relationship should not provide a basis for imputing forum contacts by Smith to Bo-gachoff or Mariner Yacht.
I recognize the Supreme Court has rejected overly “mechanical or quantitative” tests of jurisdiction. Int’l Shoe, 326 U.S. at 319, 66 S.Ct. 154. But even a realistic approach to specific jurisdiction must comport with due process, and due process requires that we consider the forum contacts of each defendant independently according to the specific claims asserted.
III.
Even if the alleged forum-related contacts could be attributed to all appellees en masse, Miller Yacht’s claims do not necessarily “arise out of or relate to” those contacts. See Burger King, 471 U.S. at 472, 105 S.Ct. 2174. The courts of appeals have adopted divergent interpretations of “arise out of or relate to” as that phrase relates to the specific jurisdiction analysis. See United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir.1992) (describing uncer *103 tainty among the circuits); see generally Mark M. Maloney, Specific Personal Jurisdiction and the “Arise from or Relate to” Requirement ... What Does It Mean?, 50 Wash. & Lee L.Rev. 1265 (Summer 1993). The distinctions between these interpretations are not without constitutional significance, as the “arise out of or relate to” requirement establishes a due process limitation on the degree of permissible attenuation between “the defendant, the forum, and the litigation.” Shaffer, 433 U.S. at 204, 97 S.Ct. 2569.
At one end of the spectrum, the Court of Appeals for the First Circuit has held that with respect to a tort claim, a non-resident defendant’s forum contacts must provide the “cause in fact” and “legal cause” for the plaintiffs injury. Mass. Sch. of Law, Inc. v. Am. Bar Assoc., 142 F.3d 26, 35 (1st Cir.1998); see also Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir.1986) (holding that forum-related contacts must form a “material element of proof’ in order for the cause of action to “arise from or relate to” the forum contacts). At the other end of the spectrum, the Courts of Appeals for the Fifth and Ninth Circuits formulate a more expansive interpretation of “arise out of or relate to,” under which a non-resident defendant’s forum contacts are sufficient if they provide a “but for” cause for plaintiffs injury. See Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1270 n. 21 (5th Cir.1981) (noting that “contractual contacts” may provide “but for” causation for a claim sounding in tort); Doe v. Am. Nat’l Red Cross, 112 F.3d 1048, 1051 n. 7 (9th Cir.1997) (“[T]he 'but for’ test is still employed in determining whether a plaintiffs injuries arose out of a defendant’s forum-related activities.”). Under this standard, a plaintiffs claim “arises out of or relates to” a foreign defendant’s contacts with the forum if the defendant’s forum activities provide a link in the causal chain which ultimately leads to plaintiffs injury.
Still other courts have navigated a course between these positions. For example, in Chew v. Dietrich, 143 F.3d 24 (2d Cir.1998), the Court of Appeals for Second Circuit has suggested a sliding scale approach to evaluating the “relatedness” of specific jurisdiction contacts, which more closely resembles the “but for” standard in its potentially expansive scope:
[T]he relatedness test is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend “traditional notions of fair play and substantial justice.” ... Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiffs injury was proximately caused by those contacts. Where the defendant’s contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiffs injury.
143 F.3d at 29 (citations omitted).
By contrast, the Court of Appeals for the Seventh Circuit has rejected this sort of “hybrid” jurisdictional analysis which effectively blends the concepts of general and specific jurisdiction:
We cannot simply aggregate all of a defendant’s contacts with a state-no matter how dissimilar in terms of geography, time, or substance-as evidence of the constitutionally required minimum contacts ... [W]hen conducting business with a forum in one context, potential defendants should not have to wonder whether some aggregation of other past and future forum contacts will render *104 them liable to suit there. Unless their contacts are continuous and systematic enough to rise to the level of general jurisdiction, individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another.
RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir.1997) (citations omitted). The Supreme Court has yet to definitively resolve the appropriate scope of the “arise out of or relate to” requirement. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (declining to reach the scope of the relatedness requirement despite having certified it for review).
Although we have not expressly articulated our view on the “arise out of or relate to” requirement, our cases implicitly apply an immediate or proximate cause standard. In analyzing jurisdictional contacts on a claim-by-claim basis, we have been careful to note that forum contacts supporting a contract claim are not necessarily relevant to establishing jurisdiction over a tort claim. For example, in Rem-ide, we noted “there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims.” 238 F.3d at 255-56. In that case, we separately analyzed the forum contacts supporting jurisdiction over plaintiffs breach of contract, tortious interference with contract, misappropriation of image, civil conspiracy and defamation claims. In finding specific jurisdiction over the breach of contract claim, we noted the contract had been solicited, negotiated, consummated and performed in the forum. At the same time however, we found insufficient contacts to support jurisdiction over plaintiffs defamation and misappropriation claims notwithstanding an express contractual relationship between plaintiff and defendant clearly situated .in the forum. In finding specific jurisdiction over plaintiffs intentional interference with contract claim, we reasoned that although the claim sounded in tort, it was “necessarily related to the contract” that was the subject of the alleged tortious interference. Id. at 260.
Likewise, in Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 153 (3d Cir.1995), we concluded that only “dealings between the parties in regard to the disputed contract, not dealings unrelated to the cause of action,” are relevant to the minimum contacts analysis. Vetrotex involved a breach of contract dispute over payments due under a 1992 supply agreement between Vetrotex and Consolidated Fiber Glass. The district court dismissed the complaint for lack of specific jurisdiction. We affirmed noting various contracts between Vetrotex and Consolidated Fiber Glass over the previous ten years were not sufficiently related to the claims based upon the contested supply agreement to give rise to jurisdiction. The claim-by-claim partitioning of jurisdictional contacts evident in Remide and Vetrotex demonstrates that forum contacts which merely provide a general context for the parties’ relationship are insufficiently related to a claim to support specific jurisdiction. '
Moreover, our holding in Pinker v. Roche Holdings, Ltd., 292 F.3d 361 (3d Cir.2002), supports application of the proximate cause standard. In Pinker, investors filed a securities fraud class action alleging foreign defendant Roche made material misrepresentations and misleading statements in press releases and reports filed with the Securities and Exchange Commission which caused plaintiffs to pay artificially high prices for Roche ADRs. The district court dismissed the complaint for lack of personal jurisdiction and we affirmed. The majority holds we *105 based our dismissal “solely on the defendant’s sponsorship of the ADR facility at issue, an action that certainly was not the proximate cause of the fraudulent misrepresentation.” But the misrepresentation claim was not predicated on sponsorship of the ADRs per se, but rather on the allegedly fraudulent information Roche filed with securities regulators in connection with that sponsorship. In finding Roche established minimum contacts by purposefully directing its activities towards the forum, the court noted that “a foreign corporation that has created an American market for its securities can fairly expect that that market will rely on reports and media releases issued by the corporation.” Id. at 372. The forum contact in Pinker - reporting incorrect or fraudulent information to federal regulators- was the proximate cause of plaintiffs’ fraudulent misrepresentation claim.
IY.
A.
The majority finds specific jurisdiction over appellees based on “three important contacts, and the context of those contacts.” The first contact concerns Miller Yacht’s allegation that Smith and Island Yacht came to New Jersey to receive one of its sales brochures. Because receipt of the brochure represents the “first step” towards the misappropriation of Miller Yacht’s photographs, floor plans and trade dress, the majority concludes this contact provides a sufficient jurisdictional basis for appellant’s common law and statutory unfair competition and trade dress infringement claims. I have a different view.
Miller Yacht’s unfair competition and trade dress infringement claims relate to misuse of its intellectual property, not to the mere acquisition or possession of that property.[9] For example, the Lanham Act, 15 U.S.C. § 1125(a), on which Miller Yacht’s infringement of trade- dress (Count I) and federal unfair competition claims (Count II) are based, prohibits the “use [ ] in commerce” of any false descriptions or designations of origin which are likely to cause confusion regarding the origin of goods or services of another. Id. (emphasis added). Likewise, the New Jersey Unfair Competition Act (Counts III and IV) prohibits a person from appropriating “for his or their own use a name, brand, trademark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals.” N.J. Stat. § 56:4-1. A claim for unfair competition under New Jersey common law (Count V) is substantially similar. American Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir.1994).
Although receipt of the sales brochure by Smith and Island Yacht in New Jersey may have provided the “first step” for Miller Yacht’s unfair competition and trade dress infringement claims, this contact at most might supply the “but for” causation for these claims. The conduct which provides the immediate cause of injury relates to the subsequent improper use of the material contained in the brochure. Applying the proximate cause standard, Miller Yacht’s unfair competition and trade dress infringement claims against Smith and Island Yacht do not “arise out of or relate to” receipt of the sales brochure.
B.
The majority observes that “placing] the misappropriated photos and floor plans *106 in boating magazines circulated in New Jersey and in at least one brochure that was sent directly to a potential customer in New Jersey” provides a “strong contact” in support of appellant’s unfair competition and trade dress infringement claims. The record reveals that these allegedly improper transmissions into the forum actually involve: (1) the use of allegedly misappropriated photographs and floor plans in Island Yacht advertisements which appear in trade publications distributed in New Jersey; and (2) the use of allegedly misappropriated photographs by Mariner Yacht in a sales brochure distributed to a single New Jersey resident. See JA 44, 47-48. These contacts should be evaluated separately to determine whether they provide a sufficient basis for exercising specific jurisdiction.
Advertising in a trade publication that reaches the forum generally does not, without more, provide a sufficient basis for exercising specific jurisdiction over a foreign defendant. See, e.g., Mesalic v. Fiberfloat Corp., 897 F.2d 696, 700 n. 10 (3d Cir.1990) (noting that non-resident defendant’s marketing strategy, including advertising in national publications distributed in the forum, provided only tangential support for specific personal jurisdiction); Gehling, 773 F.2d at 542 (holding that advertising in newspapers which reach the forum are insufficient to establish “minimum contacts”). Moreover, there is no evidence in the record regarding the frequency with which Island Yacht advertised in these publications, the number of New Jersey residents reached, or whether Island Yacht had any knowledge or control over the extent to which they targeted New Jersey consumers. Nevertheless, the extent or frequency of advertising in the forum may be less significant where, as here, the plaintiffs unfair competition and trade dress infringement claims arose directly out of the improper use of Miller Yacht’s photographs, plans and trade dress in commerce. Burger King, 471 U.S. at 476 n. 18, 105 S.Ct. 2174 (“So long as it creates a ‘substantial connection’ with the forum, even a single act can support jurisdiction.”). I agree with the majority that the allegations relating to Island Yacht’s publication of certain advertisements in trade journals that reached New Jersey are sufficiently related to Miller Yacht’s unfair competition and trade dress claims as to provide specific jurisdiction over Island Yacht with respect to those claims.
But there are no allegations or any evidence in the record that appellee Smith was involved in this advertising effort or otherwise was engaged in conduct that would permit imputing Island Yacht’s forum contacts to him. Nicholas v. Saul Stone & Co. LLC, 224 F.3d 179, 184 (3d Cir.2000) (“[Jjurisdiction over ... [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amenable to jurisdiction.”). Likewise, for reasons stated, I would not impute this contact to appellees Bogachoff or Mariner Yacht.
The second contact involves the mailing of a Mariner Yacht brochure allegedly containing Miller Yacht’s photographs to a single New Jersey resident. This contact is in some ways more significant for jurisdictional purposes than advertising in a regional trade publication because it specifically targets a resident of the forum. And, here again, plaintiffs unfair competition and trade dress infringement claims arise directly out of the allegedly improper use of Miller Yacht’s photographs, plans and trade dress in the sales brochure. As such, I agree with the majority that this contact gives rise to specific jurisdiction over Mariner Yacht on the unfair competition and trade dress infringement claims. However, because there is no allegation *107 that Bogachoff or Smith were involved in sending the sales brochure into New Jersey, there is no basis for imputing this contact to them.
C.
The majority observes that the pre-con-tractual negotiations in New Jersey provided appellees the opportunity to deal with two Chinese companies with which Miller Yacht apparently had preexisting business relationships to design and build 34’ and 38’ double cabin and sedan yachts. The majority concludes these negotiations provide a jurisdictional basis for Miller Yacht’s tortious interference with prospective economic advantage claim.
To establish a claim for tortious interference with prospective economic advantage, a plaintiff must show (1) unlawful, intentional interference with the prospect of, or reasonable expectation of, economic advantage, and (2) a reasonable probability that the plaintiff would have received the anticipated economic benefits had there been no interference. See Harper-Lawrence, Inc. v. United Merchants & Mfrs., Inc., 261 N.J.Super. 554, 619 A.2d 623, 630 (1993). While the pre-contractual negotiations may have provided appellees with names and contact information, there are no allegations that appellees solicited business from or negotiated a business relationship with the Chinese boat manufacturers while in New Jersey. If anything, it would appear that these activities took place in China or from appellees’ principle places of business outside the forum. While the effect or injury resulting from appellees’ interactions with these Chinese firms ultimately may have been felt by Miller Yacht in New Jersey, I find no forum contacts which provide a basis for specific jurisdiction on the tortious interference claim.
D.
Finally, in addition to appellees’ discrete forum contacts, the majority suggests that appellees’ unrelated pre-misappropriation conduct in New Jersey provides a “nexus” between appellees and the forum. For example, the majority notes that appellees attended trade shows in New Jersey “and in adjoining states,” and advertised in magazines distributed in New Jersey. But there are no allegations that this conduct relates to the claims asserted. While stating these contacts are not “essential to this litigation” and are only “indirectly related to Millar Yacht’s trade dress and unfair competition claims,” the majority concludes the “sum of these contacts shows that Appellees purposefully availed themselves of New Jersey.”
A forum contact that might otherwise prove jurisdictionally insufficient under a specific jurisdiction analysis may appear more convincing when swaddled in the more extensive, yet unrelated, forum contacts of a foreign defendant. And the contacts upon which the majority relies-attendance at trade shows, negotiating in the forum-may well go toward establishing New Jersey’s general jurisdiction over ap-pellees. But the parties agree that appel-lees’ forum contacts are not so “continuous and systematic” to give rise to general jurisdiction. As such, I would not consider appellees’ pre-misappropriation and unrelated forum contact as part of the specific jurisdiction analysis. ‘We cannot simply aggregate all of a defendant’s contacts with a state-no matter how dissimilar in terms of geography, time, or substance-as evidence of the constitutionally required minimum contacts.” RAR, 107 F.3d at 1277. Rather, specific jurisdiction will lie over a foreign defendant when the claim asserted “arises out of or relates to” the foreign defendant’s contacts with the forum. Burger King, 471 U.S. at 472, 105 *108 S.Ct. 2174. Emphasizing contacts unrelated to the asserted causes of action blurs the fundamental distinction between specific and general jurisdiction.
V.
In sum, I would find that only Island Yacht and Mariner Yacht have constitutionally sufficient “minimum contacts” with New Jersey to support specific jurisdiction as to plaintiffs unfair competition and trade dress infringement claims. I would not find specific jurisdiction over any of the appellees with respect to the tortious interference with prospective economic advantage claim. I would not end the jurisdictional inquiry here, however.
Where a non-resident defendant’s contacts with the forum alone are insufficient to establish specific personal jurisdiction, “we must consider whether the application of Calder v. Jones, can change the outcome.” IMO Indus., 155 F.3d at 259-60 (citation omitted). In Calder v. Jones, 465 U.S. 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court set forth an “effects test” for determining personal jurisdiction over non-resident defendants who commit intentional torts with effects inside the forum. “[Ujnder Calder an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the ‘minimum contacts’ prong of the Due Process test is satisfied.” IMO Indus., 155 F.3d at 260.[10] Because Miller Yacht’s claims sound in tort,[11] I would remand for the District Court to consider whether the effects of appellees’ non-forum conduct give rise to specific jurisdiction under the Calder framework.

. Due process requires that non-resident defendants have "minimum contacts” with the forum such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citing Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The defendant’s contacts with the forum state must have a basis in some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The "minimum contacts” analysis assesses the "relationship among the defendant, the forum, and the litigation.” Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

. In acknowledging the procedural distinctions between a Rule 12(b)(6) motion and a Rule 12(b)(2) motion, we have explained:
A Rule 12(b)(2) motion ... is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. ... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.
Patterson v. FBI, 893 F.2d 595, 603-604 (3d Cir.1990) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n. 9 (3d Cir.1984)) (internal citations omitted).

. The allegations do support an inference that Smith and Bogachoff acted as agents for Island Yacht Brokers and Mariner Trader respectively, and their forum contacts as agents may be attributed to the appellee corporations accordingly. Grand Entm't Group v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir.1993) ("[AJctivities of a party’s agent may count toward the minimum contacts necessary to support jurisdiction.”).

. Some courts have imputed jurisdictional contacts to foreign defendants in the absence of a partnership or other legal entity based upon the conspiracy theory of jurisdiction. See, e.g., Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1031 (D.C.Cir.1997) (recognizing that the conspiracy theory of personal jurisdiction requires plaintiff to plead with particularity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy”) (citation omitted); Textor v. Bd. of Regents, 711 F.2d 1387, 1392-93 (7th Cir.1983) (applying conspiracy theory of jurisdiction to Illinois long-arm statute). That said, "[w]hether personal jurisdiction can be obtained under a state long-arm statute on a conspiracy rationale at all is a question of state law.” Stauffacher v. Bennett, 969 F.2d 455, 460 (7th Cir.1992). While it is unclear whether New Jersey even recognizes the conspiracy theory of jurisdiction, we need not address this issue because Miller Yacht has not alleged an actionable conspiracy.

. There are no allegations that Smith improperly acquired the brochure. It appears Miller Yacht voluntarily provided the brochure to Smith during negotiations over the trademark licensing and exclusive dealership agreements.

. In IMO Industries, we held that to establish jurisdiction under the “effects test,” plaintiff must show: (1) defendant committed an intentional tort; (2) plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. Id. at 265-66. We recognized that this “conservative reading of Calder may significantly limit the types of business tort cases that will satisfy the requirements of personal jurisdiction,” but added that Calder did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state.” Id.

. We have described "unfair competition,” and causes of action under the Lanham Act as intentional business torts. See Granite State Ins. Co. v. Aamco Transmissions, Inc., 57 F.3d 316, 321 (3d Cir.1995) ("[T]he Lanham Act is derived generally and purposefully from the common law tort of unfair competition, and its language parallels the protections afforded by state common law and statutory torts.”) (citation omitted). Tortious interference with prospective economic advantage similarly sounds in tort, and other circuits have recognized copyright infringement as an intentional tort. See, e.g., Bucklew v. Hawkins, Ash, Baptie & Co., LLP, 329 F.3d 923, 931 (7th Cir.2003) (“Copyright infringement ... is an intentional tort.”).