**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

——————

No. 14-20619

——————

United States Court of Appeals
Fifth Circuit

**FILED**

November 23, 2015

Lyle W. Cayce
Clerk

ALBERTO JUSTO RODRIGUEZ LICEA; FERNANDO ALONSO HERNANDEZ; LUIS ALBERTO CASANOVA TOLEDO,

Plaintiffs - Appellees

v.

CURACAO DRYDOCK COMPANY, INCORPORATED, also known as Curacaose Dokmaatschappij NV, also known as CDMNV,

Defendant

v.

FORMOSA PLASTICS MARINE CORPORATION; FORMOSA BRICK MARINE CORPORATION,

Garnishees - Appellants

--------------------------------------------------------------------------------------------------------------

consolidated with No. 14-20693

ALBERTO JUSTO RODRIGUEZ LICEA; FERNANDO ALONSO HERNANDEZ; LUIS ALBERTO CASANOV TOLEDO

Plaintiffs - Appellees

v.

CURACAO DRYDOCK COMPANY, INCORPORATED,
also known as Curacaose Dokmaatschappij NV,
also known as CDMNV

Defendant

No. 14-20619
No. 14-20693

v.

FORMOSA PLASTICS CORPORATION AMERICA,

Garnishee - Appellant

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Circuit Judge:

These are appeals from a garnishment action. Appellees – Alberto Justo Rodriguez Licea, Fernando Alonso Hernandez, and Luis Alberto Casanova (together "Plaintiffs") – were successful plaintiffs in an underlying action against the Curacao Drydock Company ("Curacao"). The garnishees' appeals raise numerous questions. We hold that the court lacked personal jurisdiction over two garnishees, improperly exercised *quasi in rem* jurisdiction over a debt owed by one of them, and erroneously failed to follow Texas procedure as to the third garnishee.

## BACKGROUND

The underlying action was filed in 2006 under the Alien Tort Statute and RICO in the Southern District of Florida. *Licea v. Curacao Drydock Co.*, 584 F. Supp. 2d 1355 (S.D. Fla. 2008). It alleged that Plaintiff-Appellees endured human trafficking, false imprisonment, and forced labor in a modern-day slavery conspiracy between Curacao and the Cuban government. *Id.* at 1356-63. After initially appearing and filing several motions, Curacao "repeatedly flouted [the] Court's authority and refused to defend the matter." *Id.* at 1357. The court entered default judgment against Curacao on the issue

2

No. 14-20619
No. 14-20693

of liability and held a separate trial to set damages, at which Curacao did not appear. *Id.* at 1357-58. The plaintiffs won an $80 million judgment: $50 million in compensatory damages and $30 million in punitive damages. *Id.* at 1366. There was no appeal from that action. The plaintiffs registered their judgment in the Southern District of Texas pursuant to 28 U.S.C. § 1963 on May 7, 2013.

Three garnishees are Appellants in these cases: Formosa Brick Marine Corporation ("FBMC"), Formosa Plastics Marine Corporation ("FPMC"), and Formosa Plastics Corporation, America ("FPCA") (together "Garnishees"). Though it is not entirely clear from the record, FPCA may be the parent company of both FBMC and FPMC, FBMC and FPMC might be brother-sister corporations, and/or FPMC might own FBMC. In any case, the entities are related in a corporate family. FBMC and FPMC are Liberian corporations with their principal place of business in Taiwan but no apparent contacts with Texas. FPCA, however, is registered to do business in Texas, has a registered agent, and operates a large processing plant in the state.

Pursuant to FED. R. CIV. P. 64, TEX. R. CIV. P. 657-79, and the TEX. CIV. PRAC. & REM. CODE Ch. 63, the plaintiffs sought writs of garnishment against FBMC, FPMC, and FPCA in partial satisfaction of their judgment against Curacao. FPCA was served with process through its statutory agent for service.

FPMC and FBMC were both "served" by United States Marshals through the masters of vessels. Putative service upon FPMC was made on the master of *M/V FPMC 30* while it was docked in Corpus Christi, Texas and, again on the master of *M/V FPMC 19* when that vessel was conducting cargo operations in Texas City, Texas. FBMC was also putatively served through the master of *M/V FPMC 19* when it was conducting cargo operations in Texas

3

No. 14-20619
No. 14-20693

City.  At the time of service, each vessel was owned by other entities, and FPMC operated the vessels under contract with the owners.  Consequently, neither FBMC nor FPMC was directly served with process.  The record indicates no other connection between Texas and either FBMC or FPMC.

FPMC and FBMC nevertheless answered the writs of garnishment and moved to dismiss.  Both garnishees objected that the court lacked personal jurisdiction and that service was improper.  FPMC denied that it was indebted to Curacao, while FBMC admitted it owed $2,639,000 to Curacao.  The district court initially denied these motions without prejudice, and both parties later filed amended motions to dismiss raising the same issues.

FPCA filed a verified answer that denied any indebtedness to Curacao or that it knew any person who was so indebted.  After receiving no controverting response or affidavit, FPCA moved for discharge from the proceedings, which was denied.

Responding to plaintiffs' motion to interplead funds, FBMC deposited $2,639,000 with the clerk for the Southern District of Texas, subject to its amended motion to dismiss.  FBMC and FPMC again objected to personal jurisdiction and service of process in their objection to the district court's proposed final judgment.

The district court issued a final judgment on September 19, 2014, awarding the $2,639,000 to Plaintiffs and discharging Garnishees' liability to Curacao for that amount.

In its opinion, the district court found that "Plaintiffs provided the court with uncontroverted evidence showing that FPMC Brick Marine Corporation [the owner of the *M/V FPMC 19*] and FBMC are alter egos of FPMC and thereby each other."  The district court also found that FPCA, FBMC, and

4

No. 14-20619
No. 14-20693

FPMC were all alter egos of each other.  Serving the masters therefore effectuated service on all Garnishees.[1]

The district court noted that because Garnishees were served with writs while in Texas, the funds they owe Curacao are subject to garnishment under the court's *quasi in rem* jurisdiction.  It cited *United States Rubber v. Poage*, 297 F.2d 670 (5th Cir. 1962)).  The court rejected Garnishees' argument that *Poage* was overruled by subsequent Supreme Court decisions.

The district court also found that it would be fair to exercise jurisdiction over the Garnishees because this proceeding imposes a slight burden on them compared to normal litigation and because of the alter egos' extensive activities in Texas.  Further, because FPCA did not object to personal jurisdiction and is the alter ego of FPMC and FBMC, its amenability can be imputed to the two other corporations.

Following this judgment, this court granted FPMC's and FBMC's motion to stay enforcement of the judgment pending appeal and to accept the previously deposited amount as security in lieu of a supersedeas bond.

## STANDARDS OF REVIEW

Questions of jurisdiction, service of process, and the denial of the motion to discharge are issues of law reviewed de novo.  *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013); *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 423 (5th Cir. 2006); *Bullion v. Gillespie*, 895 F2d 213, 216 (5th Cir. 1990).  The district court's finding of alter ego is a fact that is reviewed for clear error.  *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 694 (5th Cir. 1985).

---

[1] The district court cited *Witham v. The James E. McAlpine*, 96 F.Supp. 723 (E.D. Mich. 1951) for the proposition that "[s]ervice on a captain of a ship . . . has long been the equivalent of service on the corporation."

No. 14-20619
No. 14-20693

## DISCUSSION

As a preliminary matter, FED. R. CIV. P. 64 and 69 provide that the law, both substantive and procedural, of the state where the federal court sits governs writs of garnishment unless a federal statute provides otherwise. The parties have briefed Texas law and have not called attention to any applicable federal statute. Texas law also governs the alter ego determinations, which bear on the exercise of jurisdiction over and proper service on FPMC and FBMC. *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586-88 (5th Cir. 2010) (applying state alter ego law to find lack of personal jurisdiction over a non-resident); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (noting that state law of the forum controls whether a defendant is amendable to service through its alter egos under a long-arm statute). The principal error by the district court in addressing the issues was its failure to apply Texas law.

Separate appeals were filed by FPCA, on one hand, and FBMC and FPMC on the other. The common issue raised by the Garnishees is whether the district court erred in finding that they are all alter egos of each other. Jurisdiction and service of process on FPMC and FBMC depend on the alter ego findings. Other issues concern the district court's failure to apply substantive Texas law to the garnishment and its failure to dismiss FPCA as required by Texas law when a garnishee files an uncontroverted affidavit denying possession of any account subject to garnishment. We address these points in turn.

### I.    Corporate Alter Ego

The district court found that "FPMC Brick Marine Corporation [the owner of the *M/V FPMC 19*] and FBMC are alter egos of FPMC and thereby of each other." It also found that FPMC, FBMC, and FPCA are all alter egos

6

of each other.  As a result, the court held that service on the vessel masters was sufficient to serve all of the entities, and that FPCA's failure to challenge personal jurisdiction could be imputed to FPMC and FBMC.  These findings of alter ego, which did not cite a single supporting case, were erroneous.

Texas law recognizes that the corporate form can be disregarded in certain circumstances.  *See Castleberry v. Branscum*, 721 S.W.2d 270, 272-73 (Tex. 1986).  One of the bases for doing so is the alter ego doctrine, whereby "a corporation is organized and operated as a mere tool or business conduit of another corporation."  *Id.* at 272.  Proof of imputed contacts or an alter ego relationship may be the basis for exercising jurisdiction over a non-resident defendant.  *See BMC Software Belg., N.V. v. Marchand*, 83 S.W. 3d 789, 798 (Tex. 2002); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983).

The Texas Supreme Court has "acknowledged that jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof" given that jurisdiction implicates due process considerations that cannot be overridden by statutes or common law.  *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174-75 (Tex. 2007).[2]  The court outlined the following factors relevant for jurisdictional veil-piercing:[3]

---

[2] For this reason, some alter ego cases cited by the parties are inapposite because they recite factors to consider in substantive veil piercing rather than jurisdictional veil piercing. *E.g. United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985) (the "laundry list" factors).

[3] The law in this area addresses parent-subsidiary corporations, but it is applicable to other intracorporate relationships as well.  The parties discuss the relationships among the entities in this case as if FPCA is the parent of both FBMC and FPMC, and the district court found that FPMC is the parent of FBMC and FPMC Brick Marine Corporation.  It is unclear from the record what the actual relationships are.

No. 14-20619
No. 14-20693

> To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

*PHC-Minden*, 235 S.W.3d at 175 (quoting *BMC Software*, 83 S.W.3d at 799). Other factors to consider are "the amount of the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary." *Id.* (citing 4A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1069.4). However, "[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *Id.* (quoting *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975)). There must be a "plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family." *Id.* at 176 (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)). Not pertinent to *jurisdictional* veil piercing analysis, however, are allegations of fraud[4] and a common name among the entities. *Id.* at 175.

---

[4] Garnishees are thus incorrect to stress that fraud is necessary in order to find alter ego for jurisdictional purposes.

8

No. 14-20619
No. 14-20693

In this case, the district court found an alter ego[5] relationship among FPMC Brick Marine Corporation (the owner of the *M/V FPMC 19*), FBMC, and FPMC because: (1) FPMC operated the *MV FPMC 19*; (2) FPMC Brick Marine Corporation and FBMC are both owned by FPMC;[6] (3) ship operations are performed out of FPMC's office; (4) FPMC lists the vessels on its website even though "nominally owned" by other entities; and (5) FPMC's organizational chart indicates that the master of each vessel reports to FPMC. It also found that FPCA, FBMC, and FPMC (all of the Garnishees) are alter egos of each other because: (1) all of the entities report to and are run by the same founder; (2) they share a group administrative office that combines several functions together; and (3) management of the entities is controlled at the "Formosa Plastics Group level."[7] Plaintiffs repeat these conclusions on appeal and cite portions of the record that consist of their own statements as to these "facts."

The court relied almost exclusively on two "organizational charts" submitted by Plaintiffs (taken from Garnishees' website) in finding alter ego.

---

[5] The district court actually seemed to apply the single business entity theory for piercing the jurisdictional veil, not the alter ego theory. *See Castleberry*, 721 S.W.2d at 272 ("Many Texas cases have blurred the distinction between alter ego and the other bases for disregarding the corporate fiction and treated alter ego as a synonym for the entire doctrine of disregarding the corporate fiction."); *see also Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2857 (2011) (declining to address single business entity argument). The single business entity theory would pierce the veil "when two or more corporations associate together and, rather than operate as separate entities, integrate their resources to achieve a common business purpose." *S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 86 (Tex. 2003) (internal quotation and citation omitted). The Texas Supreme Court has never endorsed this theory in any context. *PHC-Minden*, 235 S.W.3d at 173.

[6] It is unclear how the district court found this, as the page in the record it cites to for this proposition does not so indicate.

[7] It is unclear what this level is as there is no entity called "Formosa Plastics Group."

The first chart apparently shows the internal reporting structure of FPMC and the second purports to show the various levels of ownership of the entities. The charts are not probative.

First, the charts do not actually depict corporate structure. There is no indication of ownership; they do not indicate which entity owns what, which entities are parents, or subsidiaries, or brother/sister. Nor is it even clear that the "entities" on the chart are formal entities, because they have no corporate form designations. Normal organizational charts make distinctions for, *e.g.,* corporations, LLC's, disregarded entities, or foreign entities. Further, Garnishees FPCA and FBMC are not even represented on the charts.

Second, the charts do not show the functional relationship among the entities. "In determining whether an alter ego relationship exists, the court should focus on the relationship between the corporation and the entity or individual that allegedly abused corporate formalities." *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 245 (5th Cir. 1990) (citing *Castleberry*, 721 S.W.2d at 272). As Garnishees correctly put it, the organizational charts are "irrelevant because they are not probative of the issue of alter ego. They show only the structure, but not the relationships between the Formosa entities." They do not indicate any "plus factor" that entails "something beyond the subsidiary's mere presence within the bosom of the corporate family." *PHC-Minden*, 235 S.W.3d at 176. At best, they demonstrate mere affiliation, which is insufficient to pierce the veil, or common names, which are irrelevant to jurisdictional veil piercing. They do not even appear to show that the entities share common functions; the "Group Administration" boxes report to the Execupive [sic] Board, but there is no indication that these functions are performed for the entities listed on the chart. In no way do these descriptions suggest control "greater than that normally associated with common

ownership and directorship" or that the "entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *PHC-Minden*, 235 S.W.3d at 175.

In sum, the charts are not evidence that satisfies the tests endorsed by the Texas Supreme Court for jurisdictional veil piercing. The district court's findings of alter ego were clearly erroneous. Because this means that neither FBMC nor FPMC was effectually served with process, nor can personal jurisdiction be asserted over these entities based on an alter ego relationship with FPCA, we must remand with instructions to dismiss the garnishment proceeding against FBMC and FPMC.

## II.    District Court's Exercise of *Quasi in Rem* Jurisdiction

"Quasi in rem actions are based on a claim for money begun by attachment or other seizure of property when the district court has no jurisdiction over the person of the [judgment] defendant, but has jurisdiction over either property that the court can apply to the satisfaction of the defendant's debt or persons who themselves owe an obligation to the defendant that the court can apply to the satisfaction of the debt." *Stena Rederei AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.*, 923 F.2d 380, 391 (5th Cir. 1991) (citation omitted). The district court here relied several times on its finding that "[t]he Formosa Entities were served with writs of garnishment while in the state" to support its exercise of *quasi in rem* jurisdiction over the debt owed to Curacao. It is unclear on which basis the court predicated *quasi in rem* jurisdiction: whether it emanated from service of process or personal jurisdiction based on alleged alter ego status of FBMC or FPMC, or on the debt itself being "found" in Texas. For good reason, the Garnishees challenge any *quasi in rem* jurisdiction.

11

To the extent that the court believed it could exercise jurisdiction over the debt via the persons of the Garnishees, it was misguided. Our previous discussion eliminates *quasi in rem* jurisdiction on this basis.

Alternatively, the "presence" of the debt in Texas might provide a basis for the exercise of jurisdiction over it for the Plaintiffs' benefit. *See Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S. Ct. 2569, 2581 (1977) ("[P]resence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation."). Setting aside due process minimum contacts concerns, the prerequisite to this theory is a determination under state law that the debt (or other property) is actually found in the state. *Rush v. Savchuk*, 444 U.S. 320, 328 n.14, 100 S. Ct. 571, 577 n.14 (1980); *see also United States Rubber v. Poage*, 297 F.2d 670, 674 (5th Cir. 1962). Texas allows attachment or garnishment only of a debt whose situs is within the jurisdiction of the court. *T.&H. Smith & Co. v. Taber*, 40 S.W. 156, 157 (Tex. Civ. App. 1897); *see also Wirt Franklin Petrol. Co. v. Gruen*, 139 F.2d 659, 660 (5th Cir. 1944) ("Garnishment is in the nature of a proceeding in rem, as to which the situs of the res is generally determinative for purposes of jurisdiction."). The situs of the debt under Texas law is either the domicile of the creditor, *Gerlach Merc. Co. v. Hughes-Bozarth-Anderson Co.*, 189 S.W. 784, 788 (Tex. Civ. App. Amarillo 1916), or wherever the debtor may be found. *T&H.Smith*, 40 S.W. at 157. The first condition is inapplicable here, and the second is a reprise of the failed attempts to serve or find personal jurisdiction over FBMC or FPMC in Texas. Consequently, the debt to Curacao was not "found" in Texas.

III.   **Discharge of FPCA as Garnishee**

At the outset, we noted that federal courts must follow state procedural and substantive law relating to garnishments. In Texas, a putative garnishee

No. 14-20619
No. 14-20693

may file an answer to the writ of garnishment served on him.  *See* TEX. R. CIV. P. 665.  The garnishee's answer "shall be under oath, in writing and signed by him, and shall make true answers to the several matters inquired of in the writ of garnishment."  *Id.*  If either the plaintiff or the defendant is not satisfied with the garnishee's answer, "he may controvert the same by his affidavit stating that he has good reason to believe, and does believe, that the answer of the garnishee is incorrect."  TEX R. CIV. P. 673.  In the absence of a controverting affidavit, it is presumed that the garnishee's answer is true. *Snyder Nat. Bank v. Pinkston*, 219 S.W.2d 606, 607 (Tex. Civ. App. Dallas 1949).

If the garnishee's answer goes uncontroverted, the court must enter judgment discharging the garnishee when it appears from the answer that: (1) the garnishee is not indebted to the defendant and was not so indebted when served with the writ of garnishment; (2) the garnishee does not possess any effects of the defendant and had not possessed any when the writ was served; and (3) the garnishee has either denied knowledge of any other persons indebted to the defendant or possessing effects belonging to the defendant or else has named such persons.  TEX R. CIV. P. 666.  This rule is jurisdictional; the trial court has no authority to proceed against the garnishee other than to discharge him on his answer.  *Goodson v. Carr*, 428 S.W.2d 875, 879 (Tex. Civ. App. Houston 1968).  Thus, if the garnishee's answer denies indebtedness and is uncontroverted, the garnishee must be dismissed from the action.  *Gray v. Armour & Co.*, 104 S.W.2d 486, 487 (Tex. Comm'n App. 1937, opinion adopted);

13

No. 14-20619
No. 14-20693

*J.C. Hadsell & Co., Inc. v. Allstate Ins. Co.*, 516 S.W.2d 211, 213-14 (Tex. Civ. App. Texarkana 1974); *Snyder*, 219 S.W.2d at 607.[8]

In this case, FPCA filed a verified answer to the writ of garnishment that was under oath, in writing, and (1) denied indebtedness to Curacao, (2) denied possession of Curacao's effects, and (3) denied knowledge of other persons so indebted. FPCA subsequently moved for discharge after its answer went uncontroverted. Plaintiffs' unsworn response to this motion cannot be construed as controverting the answer as required by Texas law; the response merely restated plaintiffs' contentions that the Garnishees are alter egos of each other without controverting that FPCA was not indebted to Curacao. FPCA should have been discharged.

## CONCLUSION

For the foregoing reasons, the final judgment of garnishment against FBMC, FPMC, and FPCA is **REVERSED** and the case is **REMANDED** with instructions to **DISMISS**. The funds in the registry of court, together with interest thereon, must be **DISBURSED** to FBMC.

---

[8] Further, "[w]here the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff." TEX. R. CIV. P. 677. Costs include attorney fees, *J.C. Hadsell*, 104 S.W.2d at 213-14, but FPCA waived any such claim by failing to assert it.