BOLIN, Justice
(concurring in part and concurring in the result).
I concur in that part of the main opinion that holds that the trial court correctly concluded that it lacked general jurisdiction over GM Canada because general jurisdiction is proper only when the defendant’s contacts with the forum state are continuous and systematic and sufficient to render the defendant “at home” in the forum, and GM Canada’s contacts with Alabama did not satisfy this standard. I concur only in the result reached by the main opinion in holding that the trial court correctly concluded that it lacked specific jurisdiction over GM Canada. I write specially to note that recent United States Supreme Court opinions regarding personal jurisdiction have resulted in uncertainty in the area of specific jurisdiction.
The United States Supreme Court’s jurisprudence on the power of a state court to exercise jurisdiction over nonresident defendants begins with Pennoyer v. Neff, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1878), in which the Supreme Court held that a judgment of a court lacking personal jurisdiction over the defendant violated the Due Process Clause of the Fourteenth Amendment. In International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court recognized that a court could properly exercise personal jurisdiction over an out-of-state defendant if the defendant had sufficient “minimum contacts” with the forum state so that subjecting the defendant to jurisdiction in the forum state did not “offend the traditional notions of fair play and substantial justice.” From the 1940s to 1990, the Supreme Court continued to construct a framework for determining the power of a state to compel a nonresident defendant to defend suits brought against the nonresident defendant in the state’s courts.[5]
*1143 The Supreme Court did not address personal jurisdiction for 21 years until 2011, and then again in 2014, during which time the Supreme Court granted certiorari review in 4 cases. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011); J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011); Daimler AG v. Bauman, 571 U.S. -, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014); and Walden v. Fiore, 571 U.S. -, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). Goodyear, a products-liability case, involved general jurisdiction. The plaintiffs, whose sons were killed in a bus accident in France allegedly caused by a defective tire manufactured by three foreign subsidiaries of Goodyear, brought an action against the subsidiaries in North Carolina where Goodyear USA had manufacturing facilities. The plaintiffs asserted that the foreign subsidiaries were subject to general jurisdiction in North Carolina because some percentage of their tires were distributed in North Carolina by virtue of the subsidiaries’ placing them products in the stream of commerce. A unanimous Court held that the subsidiaries did not have the systematic and continuous contacts with the forum and therefore were not “fairly regarded at home” in North Carolina so as to be subject to general jurisdiction there. The Supreme Court held that the stream-of-commerce analysis that may serve to bolster the exercise of specific jurisdiction “did not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant.” Goodyear, 564 U.S. at 927.
The same day the Supreme Court released Goodyear, it released McIntyre Machinery. McIntyre Machinery was also a products-liability case, but it involved specific jurisdiction. The plaintiff injured his hand while using a machine manufactured *1144 by J. McIntyre Machinery in England, where the' company ⅛ incorporated and operates. Nicastro sued J. McIntyre in New Jersey where the accident occurred, arguing that New Jersey had personal jurisdiction over J. McIntyre because a United States distributor had agreed to sell J. McIntyre’s machines in the United States, J. McIntyre attended trade shows in the United States, though not in New Jersey, and a few J. McIntyre machines ended up in .New Jersey. The plurality opinion was authored by Justice Kennedy and joined by Chief Justice Roberts, Justice Scalia, and Justice Thomas. Applying a traditional due-process analysis, Justice Kennedy wrote that the exercise of jurisdiction in that case would violate due process when J. McIntyre had never engaged in any activities in New Jersey that revealed an intent to invoke, or to benefit from the protection of, the state’s laws. Justice Kennedy then went on to address the stream-of-commerce doctrine, writing that the stream-of-commerce doctrine cannot displace the general rule that it is the defendant’s purposeful availment that makes the exercise of jurisdiction over the defendant consistent with fair play and substantial justice. Justice Kennedy acknowledged the confusion created by the plurality opinion in Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), over the stream-of-commerce analysis, given the analysis applied by Justice Brennan in that case and Justice O’Con-nor’s writing stating that the placement of a product in-the stream of commerce, without more, is inconsistent with due process.
Justice Breyer, joined by Justice Alito, concurred in the judgment in McIntyre Machinery, concluding that because the case did not present the new and special issues arising from recent changes in eom-merce and communication, it was unnecessary to go into a full analysis of the stream-of-commerce issue as it might be applied to modern marketing. Instead, he wrote that the outcome of the case could be determined by the Supreme Court’s existing precedents, which have held that a single isolated sale, even if accompanied by the kind of sales effort indicated in the record in that case, is not sufficient because there was no “regular flow” or “regular course” of sales in New Jersey, nor was there any special state-related design, advertising, advice, or marketing directed toward New Jersey. Justice Ginsburg dissented, and Justice Sotomayor and Justice Kagan joined her dissent.
In 2014, the Supreme Court issued Daimler AG, a case involving general jurisdiction. The Supreme Court held that due process prevented California from exercising personal jurisdiction over Daimler AG, a German corporation, for allegedly participating in war atrocities in Argentina that led to the deaths and injuries of residents of Argentina. The plaintiffs asserted that jurisdiction was predicated upon the California contacts of Mercedes-Benz USA, LLC, a subsidiary of Daimler AG, incorporated in Delaware, with is principal place of business in New Jersey. The Court held that a corporation that operates in many places cannot be deemed “at home” in all those places for purposes of general jurisdiction.
Also, in 2014, the Supreme Court released Walden, a specific-jurisdiction case. In Walden, the plaintiffs were two professional gamblers from Nevada who were stopped and searched in the Atlanta airport by a Drug Enforcement Administration (“DEA”) agent. The DEA "agent seized a substantial amount of cash from the plaintiffs. The plaintiffs brought a Fourth Amendment Bivens action in'Nevada against the DEA agent.[6] The Supreme *1145 Court in Walden recognized that, although a nonresident’s physical presence is- not required to create jurisdiction, the nonresident must have certain minimum contacts based on the relationship among the defendant, the forum, and the litigation. Further, the defendant must create the contact because the minimum-contacts analysis focuses on the nonresident defendant’s contacts with the forum, not thé defendant’s contacts with persons who reside in the forum. Because all relevant conduct by the defendant occurred in Georgia, the Court found that Nevada lacked the requisite contacts with the defendant for personal jurisdiction.
The unanimous Court in Walden analyzed personal jurisdiction under the “effects” test of Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), in which the Court had held that California had jurisdiction over the writer and the editor of a newspaper story that allegedly defamed the actress Shirley Jones, emphasizing that the defendants “aimed” their efforts at California, where Jones lived and where she would suffer the greatest harm. The Walden Court distinguished Calder because, in Calder, the contacts with California were ample and, most importantly, the reputation-based injury in California was necessary for the alleged libel to be actionable, and thus connected the defendants to California, not just to the plaintiff. In contrast, all of the DEA agent’s relevant conduct in Walden occurred in Georgia.
The Supreme Court’s decision in Walden never mentions McIntyre Machinery, decided a mere three years earlier. I believe Walden and McIntyre Machinery have similarities such that the Court’s failure to address McIntyre Machinery in Walden is the reason I cannot say that the main opinion errs in applying Walden to the facts of the present case. The plaintiffs in both Walden and McIntyre Machinery suffered injuries in the forum state from conduct of the defendant that occurred outside the forum.[7] I also agree with the statement that “stream-of-commerce situations are merely a version' of negligent-effects jurisdiction, and do not require special products-liability personal jurisdiction rules.” Stanley Cox, Personal Jurisdiction for Alleged Intentional or Negligent Effects Matched to Forum Regulatory Interest, 19 Lewis & Clark L.Rev. 725, 742 (2015). Accordingly, the application of Walden to the present case may be proper in light of the recent decisions of the United States Supreme Court as discussed. I note further that the Supreme Court was able to reach a consensus the first time it addressed products liability and stream of commerce in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and, indeed, the Walden Court discusses Woodson. In light of the absence of any clear guidance from the Supreme Court, applying the most recent ease involving specific jurisdiction is the correct approach in the present case.
Based on the foregoing, I concur in part and concur in the result.

. The history of Supreme Court caselaw regarding personal jurisdiction from 1940 to 1990 is as follows: Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)(predating International Shoe and holding that domicile in the state is sufficient to bring an absent defendant within the state's personal jurisdiction); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)(holding that due process requires that service of process must be reasonably calculated to ensure that the defendant receive adequate notice under the particular circumstances of each case); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)(holding that a foreign defendant’s continuous corporate operations within the state could be so substantial and of such nature that jurisdiction may be proper even for causes of action unrelated to the foreign defendant’s contacts in the forum); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)(holding that a nonresident defendant’s actions in soliciting and later servicing an insurance contract with a state resident resulted in a reasonable and foreseeable expectation of being haled into court in that state for any causes of action arising out of those actions); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)(holding that the unilateral activity of a Delaware trustee whose only contact with Florida was administration of a trust created before the settlor moved to Florida did not satisfy minimum contacts with Florida because it is essential that the defendant’s act be a purposeful availment of the privilege of conducting activities in forum state); Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)(holding that the minimum-contacts analysis applies to in rem jurisdiction); Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)(holding that a forum state could not obtain personal jurisdiction over a parent in a custody action simply because the parent agreed to a visitation arrangement with the other parent and the other parent took the child to the forum state and initiated suit, because this would arbitrarily subject one parent to suit in any state of the Union where the other parent chose to spend time while having custody of the child pursuant to a separation agreement); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)(holding that personal jurisdiction may be present where a *1143 corporation delivers its product into the stream of commerce with the expectation that the product will be purchased by consumers in the forum state and rejecting jurisdiction based on the consumer's unilateral movement of the product into the forum state even if the movement is foreseeable); Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)(holding that the state did not have quasi in rem jurisdiction over defendant by way of garnishment of the defendant’s insurance company’s contractual obligation to defend and indemnify the defendant); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)(holding that Hustler’s regular circulation of magazines in New Hampshire was sufficient to support jurisdiction in a lawsuit arising out of the contents of the magazine even though neither the plaintiff nor the defendant resided in New Hampshire and the statute of limitations had run in every other state); Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)(holding that California had jurisdiction over the writer and editor of a story that allegedly defamed the actress Shirley Jones, emphasizing that these defendants "aimed" their efforts at California, where Jones lived and would suffer the greatest harm); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)(general-jurisdic-tion case holding that Texas did not have personal jurisdiction over a Colombian corporation in wrongful-death actions brought by the victims’ estates arising out of a helicopter crash in Peru); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(holding that jurisdiction was proper over the Michigan defendant, even though he had no physical presence in Florida, relying on defendant's many communications sent via mail concerning the franchise agreement so as to ascertain the requisite minimum contacts with Florida); Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)(plurality opinion in which the Supreme Court established two competing stream-of-commerce tests); and Burnham v. Superior Court of California, Marin Cty., 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990)(plurality opinion upholding transient jurisdiction where defendant was served with notice in the forum state).

. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)(establish- *1145 ing that, under certain circumstances, victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court).

. The plaintiffs in Walden suffered injuries in the form of attorney fees and emotional distress in that they landed in Nevada without funds. Allen Erbsen, Personal Jurisdiction Based on the Local Effects of Intentional Misconduct, 57 William & Mary L.Rev. 385 (2015), In McIntyre Machinery, the defendant’s arm-was injured in New Jersey. ■