

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00445-CV

**POLARIS INDUSTRIES INC.**,
Appellant

v.

Sean Matthew **MALONEY**,
Appellee

From the 38th Judicial District Court, Real County, Texas
Trial Court No. 2024-3907-DC
Honorable Kelley Kimble, Judge Presiding

Opinion by: Adrian A. Spears II, Justice

Sitting: Rebeca C. Martinez, Chief Justice
Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice

Delivered and Filed: June 3, 2026

AFFIRMED

This accelerated interlocutory appeal arises from the denial of a special appearance. Appellant Polaris Industries Inc. ("Polaris") challenges the trial court's exercise of personal jurisdiction in a suit brought by Appellee Sean Matthew Maloney for product liability claims allegedly arising from the sale and marketing of a Polaris Ranger off-road vehicle, which was brought to fruition by an accident that occurred in Colorado. Because the requirements for specific jurisdiction were satisfied, we affirm the trial court's order denying the special appearance.

## BACKGROUND

Maloney, a Texas resident, was injured while riding as a passenger in a Polaris Ranger, a side-by-side off-road utility vehicle manufactured by Polaris. Polaris is incorporated in Delaware and maintains its principal place of business in Minnesota. In 2011, the Ranger at issue was designed and manufactured outside Texas. In 2012, the Ranger was sold in Texas to Robert C. Pyle,[1] who bought the Ranger from a third party unaffiliated with Polaris for use on his ranch located in Texas.

In August 2023, Pyle, Maloney, Zachary Curtis,[2] and others traveled to Silverton, Colorado, to participate in off-road recreational activities in the mountains. On August 7, 2023, Maloney and Curtis were passengers in the Ranger when the vehicle rolled down a mountainside, ejecting the occupants and causing significant injuries.

Maloney subsequently filed suit in Texas against Pyle and Off-Road Truck Accessories ("Off-Road Truck").[3] Maloney brought negligent maintenance and servicing clams against Off-Road Truck, an authorized Polaris dealer, alleging that Off-Road Truck had, shortly before the accident, "agreed and undertook inspection, maintenance, and repair of" the Ranger. Maloney later amended his petition to add Polaris as a defendant, asserting claims for product design defect and marketing defect.

Polaris timely filed a special appearance contesting personal jurisdiction. In its special appearance, Polaris asserted it lacked the minimum contacts with Texas necessary to support the exercise of specific jurisdiction because the Ranger was designed and manufactured outside Texas,

---

[1]Pyle is a defendant in the underlying action.
[2]Curtis filed a petition in intervention in the underlying action.
[3]Off-Road Truck is a defendant in the underlying action.

originally sold through an independent non-party dealership to a non-party prior owner, and the accident giving rise to the suit occurred in Colorado.

Maloney argues the jurisdictional inquiry should not focus solely on the location of the accident. According to Maloney, this is fundamentally a products-liability case alleging defects in the design, manufacture, and marketing of the Ranger, and those claims arise from Polaris's purposeful sale and marketing of the Ranger in Texas. Maloney contends that Polaris's efforts to market and distribute the Ranger in Texas created the necessary affiliation between Polaris, Texas, and the litigation because the allegedly defective product entered the stream of commerce in Texas, which ultimately caused the injuries made the basis of this suit.

On June 18, 2025, the trial court conducted a hearing on Polaris's special appearance. On July 2, 2025, the trial court signed an order denying the special appearance. Polaris then filed notice of this accelerated interlocutory appeal.

## PERSONAL JURISDICTION

Polaris argues that the trial court erred in denying its special appearance because Maloney failed to establish a substantial connection between Polaris's contacts with Texas and the operative facts of the litigation. Because the issue is dispositive, we focus on whether Polaris had the requisite minimum contacts with Texas to satisfy constitutional due process.

*A. Standard of Review*

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law, which we review under a de novo standard. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002*)*. In deciding the jurisdictional issue, the trial court frequently must resolve questions of fact. *Id*. When, as here, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, the reviewing court implies all relevant facts

necessary to support the judgment that are supported by the evidence. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017); *BMC Software*, 83 S.W.3d at 795.

### B. Special Appearance Procedures

The plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff sufficiently pleads these jurisdictional allegations, the burden then shifts to the defendant to negate all the alleged bases of personal jurisdiction. *Id*. "If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute . . . , the defendant need only prove that it does not live in Texas to negate jurisdiction." *Id*. at 658-59. "The defendant can negate jurisdiction on either a factual or legal basis." *Id*. at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id*. "Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*.

### C. Applicable Law

"Texas courts may exercise personal jurisdiction over a nonresident defendant when (1) our long-arm statute authorizes it and (2) doing so comports with federal and state constitutional due process guarantees." *Goldstein v. Sabatino*, 690 S.W.3d 287, 294 (Tex. 2024). The Texas long-

arm statute permits a trial court to exercise personal jurisdiction over a defendant who "does business in this state," which is defined to include a nonresident defendant who "commits a tort in whole or in part in this state." *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 17.042(2)). "However, [even] allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). "[B]ecause Texas's long-arm statute extends personal jurisdiction as far as the federal constitutional requirements allow, the 'federal due process requirements shape the contours of Texas courts' jurisdictional reach.'" *Goldstein*, 690 S.W.3d at 294 (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016)).

A state's exercise of personal jurisdiction comports with federal due process if (1) the nonresident defendant has "minimum contacts" with the state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *M & F Worldwide Corp.*, 512 S.W.3d at 885. A nonresident defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

Specific jurisdiction exists when (1) the defendant has made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities in the state, and (2) the defendant's potential liability arose from or is related to those contacts. *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022). The defendant's contacts "must be purposeful rather than random, fortuitous, or attenuated." *Id*. (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)). A "minimum-contacts analysis focuses solely on the actions and reasonable expectations of the defendant." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005).

General jurisdiction exists when a defendant's contacts with the forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software Belgium*, 83 S.W.3d at 795-96; *Guardian Royal,* 815 S.W.2d at 228. "When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state." *Guardian Royal,* 815 S.W.2d at 228. General jurisdiction requires that a defendant be "essentially at home" in the forum state. *In re Christianson Air Conditioning*, 639 S.W.3d at 679.

In this case, the parties agree general jurisdiction does not exist because Polaris neither maintains offices in Texas nor possesses the type of continuous and systematic contacts necessary to render it "essentially at home" in this state. Accordingly, our jurisdictional analysis is limited to whether Texas courts may exercise specific jurisdiction over Polaris based on the claims asserted in this suit.

### D. Minimum Contacts

"When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation." *Guardian Royal*, 815 S.W.2d at 228. We must first determine whether Polaris purposefully established minimum contacts with Texas; that is, whether a substantial connection exists between Polaris, Texas, and the operative facts of the litigation arising from conduct purposefully directed toward this state.[4]

---

[4] Polaris does not contest "purposeful availment" and contends any inquiry into additional conduct such as its sales of Ranger vehicles in Texas, marketing efforts, dealership network, and distribution of parts and products throughout the state is irrelevant because the accident occurred in Colorado rather than Texas. However, the underlying claims allege defects in the Ranger itself; they do not solely allege a negligence claim arising from conduct occurring at the accident scene in Colorado. Accordingly, the relevant inquiry remains whether Polaris purposefully directed its conduct toward Texas such that it established minimum contacts with Texas consistent with due process requirements.

For products-liability suits like this one in which a manufacturer or designer sold its product "indirectly" to an ultimate Texas consumer through an independent distributor, the "stream of commerce" doctrine is useful when gauging the defendant's Texas contacts. *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 9 (Tex. 2021) (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 (Tex. 2010)). The "seller's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product in the stream into an act purposefully directed toward the forum State." *Id*. at 9-10 (internal quotation omitted). There must be more than that to support purposeful availment of the forum state: "Texas courts require 'additional conduct' evincing 'an intent or purpose to serve the market in the forum State,' whether directly or indirectly." *Id*. at 10. Potential additional conduct includes advertising in Texas; setting up channels of regular communication to Texas customers; soliciting business in Texas through salespersons; designing the product for the Texas market; and creating, controlling, or employing the distribution system that brought the product into Texas. *See id*.; *Spir Star,* 310 S.W.3d at 873; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007). Thus, while a nonresident need not have offices or employees in Texas to purposefully avail itself of the state, directing marketing efforts to Texas in hopes of soliciting sales may make the nonresident subject to Texas jurisdiction in suits arising from that business. *Luciano*, 625 S.W.3d at 10 (quoting *Michiana,* 168 S.W.3d at 785).

In this case, the record reflects that Polaris regularly sells and distributes Ranger vehicles in Texas, including replacement parts and related Polaris products. Polaris distributes its products through numerous dealerships located throughout the State of Texas and actively advertises and markets its products to Texas consumers. The evidence further demonstrates Polaris deliberately places its products into the stream of commerce with the intent to serve the Texas market.

Accordingly, we hold that Polaris's additional conduct was purposefully directed toward Texas and that Polaris purposefully availed itself of the privilege of conducting activities within the State of Texas.

Under Texas law, specific jurisdiction requires not only purposeful contacts with the forum but also a substantial connection between those contacts and the operative facts of the litigation. *See Rush v. Savchuck*, 444 U.S. 320, 329 (1980); *Guardian Royal*, 815 S.W.2d at 229-33; *see also Moki Mac*, 221 S.W.3d at 585 ("Considering our own jurisprudence and the Supreme Court's analysis in *Rush*, we believe that for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.").

Polaris views the actionable conduct as the accident occurring in Colorado. We disagree. The operative facts of this case concern the alleged manufacturing and product defects in the Ranger that Polaris marketed, sold, and placed into the stream of commerce in Texas. Although the accident in Colorado may have exposed the alleged defect, the accident itself is not the principal focus of the dispute between Maloney and Polaris. Rather, the litigation centers on whether Polaris designed, manufactured, marketed, and sold a defective product to Texas consumers. The additional conduct of marketing, distribution, advertising, and sales activities directed toward Texas demonstrates that Polaris purposefully targeted the Texas market. Polaris's introduction of the allegedly defective Ranger into the Texas market and into the stream of commerce constitutes the actionable conduct that forms the basis of this litigation.

We note that in support of his argument that Polaris is subject to personal jurisdiction in Texas, Maloney relies on *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 354 (2021), for the proposition that Polaris's sales, marketing, and distribution activities in

Texas sufficiently relate to this products liability action because the focus of the jurisdictional inquiry is the alleged defective product and the defendant's efforts to market that product in Texas. *Ford* arose from "a products-liability suit, stemming from a car accident" in the forum state. *Id*. Ford argued that personal jurisdiction attaches "only if the defendant's forum conduct gave rise to the plaintiff's claims." *Id*. at 361. Applying this rule, Ford argued that specific jurisdiction in a products liability action should be limited to "where Ford sold the car in question, or else the [s]tates where Ford designed and manufactured the vehicle." *Id*. Ford argued that "the place of accident and injury is immaterial." *Id*. The Supreme Court rejected this argument, explaining that a personal jurisdiction analysis is not based on a "strict causal relationship." *See id*. at 362 (explaining that "[n]one of [its] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do" and that its "most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'") (emphasis in original) (quoting *Bristol-Myers Squibb Co. v. California*, 582 U.S. 255, 262 (2017)). Instead, the Court focused its analysis on where there was a "relationship among the defendant, the forum, and the litigation," which is the "'essential foundation' of specific jurisdiction." *Id*. at 365 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In doing so, the Court emphasized that "Ford [had] extensively promoted, sold, and serviced [cars] in" the forum state. *Id*. at 371. In looking at *all* the contacts with the forum state, the Supreme Court held that Ford was subject to personal jurisdiction in the forum state. *See id*. (noting that the "resident-plaintiffs allege that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in Montana and Minnesota and holding that "[f]or all the reasons we have given, the connection between the plaintiffs' claims and

Ford's activities in those States—or otherwise said, the 'relationship among the defendant, the forum[s], and the litigation'—is close enough to support specific jurisdiction").

In *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 16-17 (Tex. 2021), the Texas Supreme Court applied *Ford* and concluded Texas could exercise personal jurisdiction over an out-of-state product manufacturer whose product, manufactured outside Texas, was sold to Texas residents and caused injury in Texas. In *Luciano*, the plaintiffs were a Texas couple who had built a home in Texas and purchased spray foam insulation services from a Texas-based installation company. *Id*. at 6. They suffered injuries in Texas allegedly arising from insulation and sought to hold the out-of-state manufacturer and parties in the chain of distribution liable. *Id*.

In considering whether the plaintiff's claims arose out of or related to the defendant's contacts with the forum state, the Texas Supreme Court in *Luciano* considered the "nexus between the nonresident defendant, the litigation, and the forum." *Id*. at 14 (quoting *Moki Mac*, 221 S.W.3d at 579). Citing *Ford*, the Texas Supreme Court rejected the out-of-state manufacturer's assertion that "without evidence that the [plaintiffs'] selected the installer because of a known, preexisting relationship with [the out-of-state manufacturer], that the [plaintiffs] specifically chose Thermoseal 500, or that the [plaintiffs] knew that the Thermoseal 500 installed in their home originated from its Texas warehouse," "the lawsuit does not 'arise out of or relate to' its contacts." *Luciano*, 625 S.W.3d at 14. The Texas Supreme Court explained that the United States Supreme Court, in *Ford*, had rejected the argument that "only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id*. (quoting *Ford*, 592 U.S. at 362).

"Instead, due process demands that a suit 'arise out of or *relate to*' the defendant's contacts with the forum." *Luciano*, 625 S.W.3d at 14 (emphasis in original) (quoting *Ford*, 592 U.S. at 362). "The first half of that standard asks about causation." *Ford*, 592 U.S. at 362. "The latter half

'contemplates that some relationships will support jurisdiction without a causal showing.'" *Luciano*, 625 S.W.3d at 14 (quoting *Ford*, 592 U.S. at 362). While the alleged injury in *Luciano* occurred in the forum state, neither *Luciano* nor *Ford* stand for the hardline rule that the accident at issue must occur in the forum state. Instead, what *Luciano* and *Ford* stand for is that the suit may either *arise* out of or *relate* to the defendant's forum contacts and still support jurisdiction. The contacts need not have caused the suit but can simply support "some relationship[ ] ... support[ing] jurisdiction without a causal showing." *See Luciano*, 625 S.W.3d at 15 (quoting *Ford*, 592 U.S. at 362). *Luciano* recognizes the importance of analyzing both the additional conduct directed toward the forum and the actionable conduct itself, explaining that Texas courts "have never required [a] lawsuit [to] arise directly from a nonresident defendant's additional conduct" "if the actionable conduct occurs in Texas." *Luciano,* 625 S.W.3d at 18. Rather, the "additional conduct serves merely to ensure the nonresident defendant has purposefully targeted the Texas market." *Id*.

We further note that Polaris relies on *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 573 (Tex. 2007), in which the plaintiffs asserted jurisdiction based in part on brochures and marketing materials that induced them to send their son on an out-of-state hiking expedition. Polaris argues that, like the defendant in *Moki Mac*, its marketing activities in Texas are too attenuated from the operative facts of the accident to support specific jurisdiction. *Moki Mac*, however, is distinguishable from the factual allegations presented in this case. In *Moki Mac*, the litigation principally concerned the alleged negligence of out-of-state hiking guides during a hiking expedition occurring entirely outside Texas, and the defendant's Texas contacts consisted largely of promotional materials and advertisements sent into Texas. *Id*. The operative facts of that case focused on the guides' allegedly negligent conduct occurring outside the forum state, not on a

product deliberately marketed and sold in Texas. *Id*. By contrast, the case before us centers on alleged defects in the Ranger itself, specifically its design, manufacture, and marketing and the record reflects Polaris extensively markets, distributes, and sells the Ranger product line throughout Texas. Unlike *Moki Mac*, the alleged forum contacts here are not merely incidental advertisements untethered from the underlying claims; rather, the claims directly concern the very product Polaris purposefully, marketed, and sold in Texas. Under these circumstances, the connection between Polaris's Texas activities and the underlying litigation is sufficiently related to support specific jurisdiction consistent with due process.

*E. Fair Play and Substantial Justice*

Once minimum contacts have been established, we must still consider whether exercising jurisdiction over Polaris would run afoul of "traditional notions of fair play and substantial justice." *Luciano,* 625 S.W.3d at 18 (quoting *Int'l Shoe*, 326 U.S. at 316). "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal*, 815 S.W.2d at 231. In making this determination, the following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id*. at 232.

In applying the first factor, the burden on Polaris is minimal. Polaris exercised the privilege of conducting activities within Texas, and the fact that its place of business is elsewhere does not defeat jurisdiction. *See Luciano*, 625 S.W.3d at 18. The second factor also supports jurisdiction,

because Texas has an interest in exercising jurisdiction in suits arising from injuries sustained from allegedly defective products purposefully brought into the state. *See id.*; *see also Ford*, 592 U.S. at 367-68 (explaining that "allowing jurisdiction in these cases treats Ford fairly" because the forums' courts should enforce not only Ford's "commitment" to manufacturing safe cars for forums' residents but also "contracts, the defense of property, and the resulting formation of effective markets," all of which benefit Ford when conducting activities in forums). The third and fourth factors also favor Texas exercising jurisdiction, because Texas is where the majority of the parties and witnesses reside, and where the injured parties are receiving medical treatment and continuing their recovery. Additionally, exercising jurisdiction in Texas promotes the efficient adjudication of the related companion litigation arising from the same occurrence. *See Luciano*, 625 S.W.3d at 19. Under the fifth factor, the parties do not raise any differences between fundamental substantive social policies between Colorado and Texas, and based on the foregoing, Texas is where the actionable conduct occurred that resulted in injury and Texas possesses a strong policy interest in ensuring that products purposefully marketed and sold within its borders are not defective. Therefore, we conclude that Texas exercising specific jurisdiction over Polaris would not offend traditional notions of fair play and substantial justice. *See id*.

## CONCLUSION

We hold that the trial court did not err by denying the special appearance. Polaris purposefully availed itself of the privilege of conducting activities in Texas, and those activities are sufficiently related to the facts of this case. Accordingly, the exercise of personal jurisdiction over Polaris comports with constitutional due process guarantees. The trial court's order denying Polaris's special appearance is therefore affirmed.

Adrian A. Spears II, Justice